JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiffs-appellants, Roger and Jackie Sutliff (referred to herein as "Roger" and "Jackie," individually and collectively as the "Sutliffs"), appeal from the judgment of the trial court that granted defendants-appellees motion for summary judgment on their claims, including negligence and spoliation of evidence. The Sutliffs' claims arose from injuries that Roger sustained when a broken wooden parking gate arm bearing an attached metal sign became airborne and struck him in the head. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings
 {¶ 2} The appropriate standard of review requires that the facts be construed in a light most favorable to the Sutliffs.
 {¶ 3} On May 21, 2004, the Sutliffs were guests of the Cleveland Clinic Guest House, which was owned by defendant, Cleveland Clinic Foundation ("CCF"), and operated by defendant, InterContinental Hotels Corporation ("InterContinental").[1]
 {¶ 4} Defendants moved for summary judgment alleging there were no genuine issues of material fact on any of the Sutliffs' claims. Defendants asserted that the injuries arose from an Act of God, that they had no notice of any hazard or defect in the parking gate arm, and that they did not intentionally destroy evidence.
 {¶ 5} In opposition to defendants' summary judgment motion, Roger submitted an affidavit asserting, among other things, that he "observed several times that parking gate arms controlling ingress and egress to the Cleveland Clinic Guest *Page 4 
House Hotel's parking lot were broken off and lying on the ground." On May 21, 2004, Roger says he noticed a parking gate arm from the parking lot broken off around 3:00 p.m. He returned to the parking lot around 4:00 p.m. that day and saw both parking arms broken off and lying on the ground. It was raining and windy at that time. The parking arms had yellow signs attached to them. Roger then parked his car and walked towards the hotel. He looked behind and saw something yellow flying toward him. He was struck in the head by a parking gate arm and was rendered unconscious. He was subsequently hospitalized and unable to undergo a scheduled open heart surgery due to head injuries that he suffered on May 21, 2004. Roger stated he received a message about a month later from CCF's law department asking to "discuss the accident that occurred while [he] was a guest at the Cleveland Clinic Guest House Hotel."
 {¶ 6} The Sutliffs also submitted an affidavit and report of their expert, Robert C. Winn ("Winn"). Winn averred that defendants altered the original design of the parking gate arms by installing the metal signs on them. Winn performed various tests comparing aerodynamic forces generated by parking gate arms both with and without attached metal signs under weather conditions similar to those recorded by Cleveland-Hopkins and Burke Lakefront daily and hourly on May 21, 2004. Although the actual parking gate arms with attached metal signs were unavailable, Winn was able to conduct his testing based upon the dimensions provided in discovery. *Page 5 
 {¶ 7} Winn concluded that a parking gate arm with an attached metal sign was more likely to become airborne than one without a metal sign. Once airborne, the "sign/arm will rapidly approach the speed of the wind and pose significant hazard to a passerby." An arm without a sign would likely tumble along the ground in high winds. Based on the information he reviewed, Winn further opined that "the wind speeds recorded on the day of the accident were likely to occur at least once almost every year" in Cleveland. According to Winn, "the sign created a lifting surface that was likely to cause the gate/arm unit to become airborne."
 {¶ 8} The Sutliffs also submitted the affidavit of Colleen Gaughan ("Gaughan"), whose employer required her to park in the Cleveland Clinic Guest House Hotel's parking lot during her employment from the Spring of 2003 until Fall of 2004. She stated that the parking gate arms controlling ingress and egress to the Cleveland Clinic Guest House Hotel parking lot were regularly broken off during this time frame. According to her, the parking gate arms were, on average, broken off "at least once every two weeks."
 {¶ 9} Conversely, defendants submitted the affidavit of Owen McBride, who at the time was Assistant Chief Engineer of the Cleveland Clinic Guest House Hotel. He stated that he had no problems with the parking gate barriers and had not noticed any problems with the arms prior to May 21, 2004. Specifically, he stated by affidavit, "Guest House had no notice of, or any reason to believe that there were problems that would cause the parking gate barrier arms to break from high winds." During his deposition, McBride testified that the parking gate arms would break *Page 6 
"when somebody would run into them." He estimated that they replaced "about four arms every six months." McBride also agreed that the parking gate arms were designed to break away.
 {¶ 10} McBride also testified that he retained the broken arms from the Sutliff accident for one month at the request of police and then discarded them "in normal course of business when litigation was neither pending nor appeared probable."
 {¶ 11} The defendants moved for summary judgment, which the Sutliffs opposed. The trial court granted the defendants' motion and the Sutliffs appeal assigning the following error for our review:
 {¶ 12} "I. The trial court erred by granting summary judgment to defendants Cleveland Clinic Foundation and InterContinental Hotels Corporation because the evidence submitted, when viewed in a light most favorable to plaintiffs, created a genuine issue of material fact and reasonable minds could have found in favor of plaintiffs."
 {¶ 13} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. De novo review means that this Court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial.Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 14} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as *Page 7 
a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ. R. 56 ©).
 {¶ 15} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107; Civ. R. 56 ©). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
A. Act of God Defense.
 {¶ 16} Defendants asserted, as an affirmative defense, that they are not liable for the Sutliffs' injuries, because they claim the injuries resulted solely from an Act of God. In Piqua v. Morris (1918),98 Ohio St. 42, the Ohio Supreme Court addressed the Act of God defense in the context of a negligence action and held:
 {¶ 17} "1. The proximate cause of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened. The fact that some other cause concurred with the negligence of a *Page 8 
defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence.
 {¶ 18} "2. In the construction and maintenance of a hydraulic, or similar work, a municipality, or other owner, is required to use ordinary skill and foresight to prevent injury to others in times of floods to be reasonably anticipated; and if injury is caused by the negligence of such owner, he is liable in damages, provided his negligence is one of the proximate causes of the injury, although it concurred with other causes, including the Act of God.
 {¶ 19} "3. In order to fix liability on an owner in such case, it must be shown that his negligence concurred with the Act of God in causing the injury; but if the Act of God, such as an extraordinary flood, was so overwhelming and destructive as to produce the injury, whether the defendant had been negligent or not, his negligence cannot be held to be the proximate cause of the injury." Id., paragraphs 1-3 of the syllabus.
 {¶ 20} In order for the Act of God defense to apply and bar a plaintiff's negligence claims at the summary judgment stage, there must be no evidence in the record from which a reasonable mind could conclude that the defendant's negligence concurred in any way with the Act of God in proximately causing the plaintiff's injuries or that defendants could have reasonably anticipated, guarded against and foreseen the Act of God which caused the injuries, in this case a Spring thunderstorm in Cleveland. Defendants contend the evidence is lacking as to the *Page 9 
latter. Namely, defendants quote from an excerpt from Piqua in support of their position that the thunderstorm was the equivalent of a "violent storm" that they could not have reasonably anticipated, guarded against or resisted, and that the accident was due "directly and exclusively to such a natural cause without human intervention."
 {¶ 21} The record contains evidence that but for defendants attaching a metal sign to the parking gate arm, the injury would not have occurred even in the weather conditions similar to those encountered by Roger on May 21, 2004 in Cleveland. Accordingly, reasonable minds could conclude that human intervention, i.e., defendants' attaching metal signs to the wooden gate arms, combined with the weather conditions to proximately cause the injuries. Also, there is evidence that the weather conditions were not so extraordinary and unusual that they would preclude a jury issue as to defendants' negligence as a coinciding proximate cause of the injuries as a matter of law.
 {¶ 22} Both of the court of claims cases upon which defendants rely to support their position are distinguishable from the instant matter. SeeColbert v. Ohio DOT, Dist. 4, Ohio Ct.Cl. No. 2005-08654-AD,2006-Ohio-189; Wright v. Ohio Dep't of Natural Res., Ohio Ct.Cl. No. 2003-11755-AD, 2004-Ohio-3581. First, neither Colbert norWright involved a summary judgment disposition and arguably support the Sutliffs' argument that this matter is properly left for determination by the trier of fact. The standard of proof applied in Colbert andWright required the plaintiffs to prove their claims by a preponderance of the evidence. Conversely, in this case, the *Page 10 
standard of review is to construe the evidence in a light most favorable to the Sutliffs. Colbert and Wright are also factually distinguishable.
 {¶ 23} In Colbert, the plaintiff's vehicle was damaged by a wind-blown construction sign. Colbert maintained that ODOT breached its duty to maintain its highway in a reasonably safe condition for the motoring public. The Court of Claims held that the plaintiff did not produce any evidence of negligence on the part of ODOT or its agents, specifically, there was no evidence that the subject sign was negligently installed or inspected. That differs from this case where plaintiffs produced evidence that defendants altered the original design of a wooden parking gate arm by installing metal signs to it and also presented evidence that broken gate arms lying on the ground were a relatively common occurrence at the Guest House Hotel parking lot. Wright is likewise factually distinguishable. In Wright, the plaintiff's vehicle was damaged by a falling tree limb blown down during the course of a violent storm with accompanying winds of 50 to 80 mph. There was no evidence that the DNR did anything to contribute to the fall of the tree limb. InWright, the Court of Claims noted that "if proper care and diligence on the part of defendant would have avoided the act, it is not excusable as an `Act of God.'" Wright, 2004-Ohio-3581, ¶ 8, quoting Bier v. City ofNew Philadelphia (1984), 11 Ohio St.3d 134. The court resolved that the storm at issue in Wright was strong enough to cause plaintiff's damage by its own power alone "as evidenced by amount of tree [sic] toppled on DNR grounds." Id. at ¶ 11. The court noted that Wright "failed to produce sufficient evidence to establish defendant acted in a negligent manner regarding tree trimming *Page 11 
choices." Id. There is no evidence in this case to establish that the storm alone caused Roger's injuries.
 {¶ 24} When the evidence is construed in a light most favorable to the Sutliffs, the Act of God defense cannot be applied to bar the claims as a matter of law.
B. Notice of a Defect or Hazard.
 {¶ 25} Defendants maintain that summary judgment was appropriate because they claim to have had no notice of any hazard or defect in the parking gate arm.
 {¶ 26} An owner or occupier of the premises ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203. They "must also inspect the premises to discover possible dangerous conditions of which [the owner or occupier] does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." Perry v.Eastgreen Realty Co. (1978), 53 Ohio St.2d 51, 52. "When it is the property owner itself who creates the hazardous condition which causes the plaintiff's injury, then the plaintiff need not show that the owner had knowledge or notice of the condition at issue. This sensible rule follows because one who has created the condition is presumed to know what it created." Crane v. Lakewood Hosp. (1995), 103 Ohio App.3d 129,136, internal citations omitted.
 {¶ 27} There appears to be no dispute that the parking gate arm was altered by defendant(s) who attached a metal sign to it. According to Winn, this deviated *Page 12 
from the original design of the parking gate arms and created a larger surface area for the wind to catch. There is evidence that a gate arm with a sign is more likely to become airborne than one without a sign, and that the sign created greater aerodynamic forces thereby increasing the hazard of injury to passersby.
 {¶ 28} We alternatively address defendants' argument that they had no notice that the wind could cause a broken parking gate arm with an attached metal sign to strike a passerby. It is not necessary for the precise incident to have occurred in order to establish a genuine issue of material fact over a defendants' constructive knowledge that a hazardous condition existed. The appropriate inquiry is whether defendants should have been aware of a hazardous condition. Based on the evidence in the record, there is evidence upon which a reasonable mind could conclude that defendants had constructive notice of the fact that broken parking gate arms could cause injury to their invitees.
 {¶ 29} The record contains evidence that parking gate arms were frequently lying on the ground at the Guest House parking lot that was owned and maintained by the defendants. This includes the affidavits of not only Roger and a disinterested third party, but also the testimony of McBride, whose job at the Guest House Hotel included maintaining the parking lot. McBride estimated that approximately four parking gate arms were replaced every six months. But, if Gaughan's testimony is believed, it would have been necessary to replace parking gate arms every two weeks on average. There is also evidence that the weather conditions on that day were not necessarily extraordinary for the Cleveland area at that time of year. *Page 13 
 {¶ 30} Construing the evidence in a light most favorable to the Sutliffs, a reasonable juror could conclude that defendants created the hazard or had constructive notice that parking gate arms broke off frequently and that attaching metal signs to them posed a foreseeable hazardous condition to passersby and invitees — ultimately an issue for the jury to resolve.
 {¶ 31} The assignment of error is sustained to the extent that the trial court erred by granting summary judgment to defendants on the Sutliffs' negligence claim and the derivative loss of consortium claim.
C. Spoliation of Evidence.
 {¶ 32} "To recover on a claim for spoliation of evidence (also referred to as interference with or destruction of evidence), a plaintiff must prove all of the following elements: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of defendant that litigation exists or is probable; (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts." O'Brien v. City of OlmstedFalls, Cuyahoga App. Nos. 89966 and 90336, 2008-Ohio-2658, ¶ 17, citingSmith v. Howard Johnson Co. (1993), 67 Ohio St.3d 28, 29.
 {¶ 33} McBride initially retained the parking gate arms at the request of the police to facilitate their investigation. After about a month, McBride discarded them in the usual course of business. The Sutliffs speculate, but have presented no evidence, that McBride willfully destroyed the gate arms to disrupt their case. Nor have they presented evidence of any damage as a proximate result. The Sutliffs, *Page 14 
who are the nonmovants, may not rest upon bare assertions to establish their claim but must set forth specific facts demonstrating a genuine issue for trial. See Civ. R. 56(E). The trial court did not err by granting defendants motion for summary judgment on the spoliation of evidence claim and the assignment of error is overruled on this claim.
Judgment affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.
It is ordered that appellant and appellees each pay their respective costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and MARY J. BOYLE, J., CONCUR.
[1] CCF and InterContinental will be collectively referred to herein as "defendants." The Sutliffs dismissed the third-named defendant, Standard Parking Corporation, without prejudice. *Page 1