[Cite as *Korengel v. Little Miami Golf Ctr.*, 2019-Ohio-3681.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RYAN KORENGEL, a Minor, Individually and by and Through his Parents and Next Friends, DONALD KORENGEL and MICHELLE KORENGEL, | : : : : | APPEAL NO. C-180416 TRIAL NO. A-1205105 |
| MICHELLE KORENGEL, | : | *O P I N I O N.* |
| DONALD KORENGEL, | : | |
| and | : | |
| MEGAN KORENGEL, | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| LITTLE MIAMI GOLF CENTER, | : | |
| HAMILTON COUNTY PARK DISTRICT, | : | |
| HAMILTON COUNTY PARK DISTRICT—SAFETY DIVISION, | : : | |
| and | : | |
| DENNIS WELLS, in his Official Capacity, | : | |
| Defendants-Appellants, | : : | |
| and | : | |
| DENNIS WELLS, in his Individual Capacity, et al., | : : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 13, 2019

*Rendigs, Fry, Kiely & Dennis, LLP*, *Peter L. Ney*, *John F. McLaughlin* and *Michael J. Chapman*, for Plaintiffs-Appellees,

*Schroeder, Maundrell, Barbiere & Powers*, *Lawrence E. Barbiere* and *Kurt M. Irey*, for Defendants-Appellants.

**WINKLER, Judge**.

{¶1} This appeal, the second in the case, addresses whether defendants-appellants Little Miami Golf Center (the "Golf Center"), Hamilton County Park District, Hamilton County Park District—Safety Division (collectively the "Park District"), and Dennis Wells, a golf professional at the Golf Center acting in his official capacity (collectively "Appellants"), are entitled to summary judgment on the basis of immunity under R.C. Chapter 2744, the Political Subdivision Tort Liability Act, from claims brought by Ryan Korengel and his family, Michelle, Donald and Megan (collectively "Korengels"). The claims are for injuries Ryan sustained as a youth from a falling tree limb that struck him while he was playing golf during a windstorm from Hurricane Ike that overtook the Park District's Golf Center. At the time of Ryan's injury, the Golf Center's clubhouse was equipped with a siren to warn golfers of impeding severe storms, but it was not activated by employees.

{¶2} After a remand by this court in *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833 (1st Dist.) ("*R.K. I*"),[1] the case proceeded on Ryan's three claims that survived a motion for judgment on the pleadings, as well as his family members' derivative loss-of-consortium claims. Ryan alleges the Park District is liable to him because his injury resulted from a defective tree or siren and the Park District employees at the Golf Center were negligent/reckless in the repair and maintenance of the tree and in the maintenance of or failure to use the storm siren. He additionally claims the Park District is liable to him for reckless supervision based on the failure to warn him of the impending weather, while turning away other golfers because of the weather.

---

[1] In the first appeal, Ryan was a minor and, for that reason, we used initials when making reference to Ryan and his family.

{¶3} Upon our review, we conclude issues of material fact exist as to whether the Park District is liable to Ryan under the physical-defect exception to immunity for negligence in the maintenance of the tree and in failing to activate the storm siren, and therefore, summary judgment was properly denied as to those claims. Because the record contains no facts demonstrating that employees turned away golfers due to the weather before Ryan's injury, the Park District is entitled to the immunity defense set forth in R.C. 2744.03(A)(5) with respect to that recklessness claim, and we reverse the denial of summary judgment on that claim.

### Background Facts and Procedure

{¶4} Some of the facts in this case are undisputed. These demonstrate that on September 14, 2008, Ryan, then 12 years old, and three other boys paid to play golf on the nine-hole, par-three golf course at the Golf Center, which was owned, operated, and maintained by the Park District. The Golf Center advertises to golfers through signage and on the scorecard that it will "attempt to notify them of potentially severe weather conditions" by sounding a siren, communicating the "recommend[ation] [that the golfer] seek shelter or vacate the course immediately."

{¶5} When the boys teed off on the 1st hole around 1 p.m., the weather was warm, sunny, and breezy. As they progressed from hole to hole, the wind continually increased. The golf course play coordinator told the boys to pick up their pace near the fourth green, but he never warned them about the approaching storm.

{¶6} As the boys teed off on the sixth hole, the wind became noticeably stronger and continued to increase. On the seventh hole, the boys began to hear tree limbs cracking and saw tree limbs breaking and falling from trees in the woods adjacent to the course.

4

{¶7} By the time the boys teed off on the eighth hole, they could see trees swaying and heard more cracking of limbs. At around 2:30 p.m., Ryan was preparing to putt on the eighth green when tree limbs from a nearby silver maple tree fell towards him. One struck him in the head, resulting in serious and permanent injury.

{¶8} Before Ryan's injury, no one from the Golf Center activated the siren located in the Golf Center's clubhouse. Undisputedly, the wind was a cause of the branch failure, and on that same day, the dangerous winds from the unusual wind-only storm caused much damage in the Greater Cincinnati area, including at the Golf Center, where it caused other trees to fail and downed power lines.

{¶9} The Korengels filed a complaint against Appellants, and several other defendants who have been dismissed, alleging multiple claims, including several based on negligence/recklessness and derivative loss-of-consortium claims. Appellants moved for judgment on the pleadings on the grounds of political-subdivision immunity for the Park District and its employee Wells. The trial court denied the motion in its entirety. Appellants then appealed the denial of the motion to this court.

{¶10} In that appeal, this court reviewed the Korengels' negligence/recklessness allegations in light of the statutory analysis for determining whether a political subdivision is immune from liability. This analysis is three tiered. First, R.C. 2744.02(A)(1) sets forth the general grant of immunity for political subdivisions for damages in a civil action allegedly caused by any act or omission of a political subdivision or employee in connection with a governmental or proprietary function. Second, the immunity afforded to a political subdivision under R.C. 2744.02(A)(1) is subject to the exceptions to immunity listed in R.C. 2744.02(B). Third, if any one or more exceptions apply, immunity

can be reinstated if the political subdivision can show that one or more of the defenses contained in R.C. 2744.03 apply. *R.K. I.*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 8.

{¶11} We concluded, based on the allegations, that the Park District was entitled to the general grant of immunity under R.C. 2744.02(A)(1) because it is a political subdivision and was engaged in a governmental function—the operation of a golf course—in connection with Ryan's injury. *Id.* at ¶ 14.

{¶12} Next we determined that the negligence/recklessness claims against Appellants were reinstated because the allegations sufficiently triggered the physical-defect exception to immunity under R.C. 2744.02(B)(4), which creates liability for political subdivisions "for injury death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." Of importance to this appeal, we noted that the Korengels had alleged various theories of employee negligence and that their allegation of an "unmaintained tree limb" or "[un]maintained" "storm siren[]" may qualify as a "physical defect" as contemplated by the statute. *R.K. I* at ¶ 20-22.

{¶13} Finally, we reviewed Appellants' argument that, based on the allegations, the defenses in R.C. 2744.03(A)(3) and (5) would apply to reinstate any immunity removed by an exception. To determine whether Appellants had shown any defenses to reinstate immunity as a matter of law, we carefully analyzed the specific allegations in the Korengels' multiple claims to determine if those allegations impugned the type of discretionary decisions given protection under R.C. 2744.03(A)(3) and (5).

{¶14} We concluded that the Korengels' cause of action could proceed on the theories arising out of the Park District's employees' alleged negligent/reckless repair and

maintenance of the tree, negligent/reckless maintenance or use of the storm siren, and reckless, not just negligent, supervision of Ryan, by failing to warn him or otherwise get him off of the golf course while at the same time turning away other golfers due to the weather, as well as the Korengel family members' derivative loss-of-consortium claims. *Id.* at ¶ 35, 37, 39, 41, 51.

{¶15} As a result of our analysis, we directed the trial court on remand to enter judgment for Appellants as to the allegations that the Park District was negligent and/or reckless in designing the golf course, negligent and/or reckless in failing to adopt and/or implement plans for severe weather, monitoring adverse weather, and care for children, and was negligent and/or reckless in failing to provide staff, such as security patrols or course rangers before or during the storm, and several other claims not relevant on appeal. *R.K. I.*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 35, 38-42, and 51.

{¶16} On remand, the parties engaged in discovery. Appellants then moved for summary judgment on all the remaining claims, again claiming that the Park District had political-subdivision immunity. The Korengels opposed summary judgment. After allowing additional discovery and ordering supplemental briefing, the trial court denied the motion for summary judgment, determining that genuine issues of material fact remained on multiple claims, including claims we held had not survived the motion for judgment on pleadings.

### *This Appeal*

{¶17} In their sole assignment of error, Appellants argue the trial court erred by denying their motion for summary judgment. An order denying a political subdivision the benefit of claimed immunity from liability is a final appealable order under R.C. 2744.02(C) and is immediately appealable. *See Sullivan v. Anderson Twp.*, 122 Ohio

7

St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 12-13. Our review of the order is limited to alleged errors involving the denial of the benefit of an alleged immunity from liability. *See Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 20; *Windsor Realty & Mgt., Inc. v. N.E. Ohio Regional Sewer Dist.*, 2016-Ohio-4865, 68 N.E.3d 327, ¶ 15 (8th Dist.).

{¶18} Summary judgment may be granted when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party. Civ.R. 56(C); *Pelletier v. City of Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13.

{¶19} We review the trial court's order de novo, and may remand the case if a genuine issue of material fact remains that necessitates further development of the facts regarding the issue of immunity. *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 21.

### *Analysis*

{¶20} There is no question that the Park District is entitled to the first-tier general immunity for all the remaining claims. *See R.K. I*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 14. This appeal concerns the second and third tiers of the immunity analysis with respect to those claims.

{¶21} Initially, we must address the trial court's failure on remand to enter judgment for Appellants on the claims that did not survive the motion for judgment on the pleadings. We have already held that Appellants are entitled to judgment on these claims based on political-subdivision immunity, including the allegations in Count 5, involving

the failure to adopt or implement a plan to monitor adverse weather. Under the law-of-the-case doctrine, "legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels." *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 1, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). The trial court erred by failing to comply with our mandate, as required by the law-of-the-case doctrine.

{¶22} Now we address Appellants' argument related to the claim of recklessness in failing to warn Ryan or otherwise get him off of the course while turning away other golfers due to the weather. Appellants' position is that, assuming an exception to immunity applies to reinstate the claim, the defense of R.C. 2744.03(A)(5) applies because there is no evidence of the predicate reckless conduct.

{¶23} Appellants presented evidence below that no golfers were turned away before Ryan's injury due to the weather. This included deposition testimony from both clubhouse employees who were selling green fees during the relevant time before Ryan's injury.

{¶24} In opposing summary judgment on this claim, the Korengels cited deposition testimony from a bystander and one of the clubhouse employees. The bystander testified that his daughter had gone into the clubhouse before Ryan's injury and, when she returned to the car, she told her father the course was closed. Appellants maintain, however, and we agree, that the bystander daughter's statement is hearsay that cannot be relied upon when ruling on a motion for summary judgment. *See* Civ.R. 56(E).

{¶25} The testimony from the clubhouse employee indicates only, consistent with Appellants' representation, that this employee told two girls who entered the clubhouse

after the accident that they could not golf and the course was closed. He specifically denied that anyone was turned away before Ryan's injury.

{¶26} The admissible facts, even when construed in favor of the Korengels, fail to create a genuine issue of material fact. Because reasonable minds could only conclude that Park District employees did not turn away other golfers due to the weather before Ryan's injury, Appellants were entitled to summary judgment based on the immunity defense afforded by R.C. 2744.05(A)(5).

{¶27} Next we address whether summary judgment was erroneously denied as to the claims involving the failure to maintain the tree and the failure to maintain or use the storm siren. Appellants argue that they are entitled to summary judgment because the only potentially applicable exception to the Park District's general immunity is the physical-defect exception found in R.C. 2744.02(B)(4), and that exception did not remove immunity, as neither the tree nor the siren had a physical defect and there was no evidence of employee negligence.

{¶28} Relatedly, Appellants assert that the open-and-obvious doctrine and the "act of God" defense barred the claims. In the alternative, they argue that, if there is evidence upon which reasonable minds could differ with respect to whether the physical-defect exception applied, the Park District's immunity is reinstated under R.C. 2744.03(A)(3) or (5).

### Physical-Defect Exception

{¶29} To establish the physical-defect exception, a plaintiff must show that the injury, death, or loss (1) resulted from employee negligence, (2) occurred within or on the grounds of buildings used in connection with a governmental function, and (3) resulted

from a physical defect within or on the grounds of buildings used in connection with a governmental function. R.C. 2744.02(B)(4).

{¶30} We first address the "physical defect" element of the exception. "Physical defect" is not defined in R.C. Chapter 2744, but this court in *R.K. I* defined the term as " 'a perceivable imperfection that diminishes the worth or utility of the object at issue,' " a definition that had been applied by other courts. *R.K. I*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 16, quoting *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 25.

{¶31} As we noted in *R.K. I*, the Korengels allege in the complaint that the condition of the tree limb and the storm siren constituted physical defects. *R.K. I* at ¶ 20-21. Thus, when moving for summary judgment, Appellants presented evidence that the storm siren and tree limb were not defective, and therefore, summary judgment was warranted.[2]

{¶32} With respect to the storm siren, Appellants submitted deposition testimony and exhibits, including maintenance records, showing only that the siren had been maintained and the device was functioning as intended on the day of the incident. The siren was part of the Thorguard Lightening Prediction System, and that system was designed to automatically predict and alert of imminent lightening in the area. The siren could be manually activated by staff, but it was undisputed that no one attempted to activate the siren before Ryan's injury.

{¶33} The Korengels did not present any facts to rebut Appellants evidence that the siren had been properly maintained and was working properly. Thus, there was no

---

[2] Appellants additionally argued that there was no evidence that the siren caused the injury, as required by the statutory language that the injury result from the physical defect. We do not need to reach this issue because there is no evidence that the siren was defective.

evidence to support their allegation that the condition of the storm siren was a physical defect within or on the grounds of the Golf Center.

{¶34} Before reviewing Appellants' evidence with respect to the tree limb, we must first address Appellants argument that trees, which are living objects, cannot constitute "physical defects" for purposes of R.C. 2744.02(B)(4). This court rejected that argument in the first appeal. *See R.K. I*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 19-20. As we are presented with the same facts and issues, the law-of-the-case doctrine prevents us from revisiting it. *See Farmers State Bank v. Sponaugle*, Slip Opinion No. 2019-Ohio-2518, ¶ 22-23. We will, however, expound upon our prior holding that a tree limb may constitute a physical defect for purposes of R.C. 2744.02(B)(4).

{¶35} Admittedly, no tree can ever be absolutely safe and immune from branch failure. Thus, the mere fact that a tree limb fell does not mean the limb had a perceivable imperfection that diminished the worth or utility of the limb, a requirement for a physical-defect finding. The United States Forest Service describes "a 'hazard tree' [a]s a tree that has a structural defect that makes it likely to fail in whole or in part." https://www.fs.fed.us/visit/know-before-you-go/hazard-trees (accessed Sept. 4, 2019). Consistent with this description, we conclude that, where a tree has a perceivable structural defect that makes the tree likely to fail, a falling branch from the tree may be a physical defect for the physical-defect exception to immunity set forth in R.C. 2744.02(B)(4).

{¶36} In support of their contention that the tree limb was not a "physical defect," Appellants submitted the report of their independent expert arborist, Alan Bunker, who, ten days after the windstorm, had examined the tree in question, and photographs of the fallen limbs, including the one that had struck Ryan. The photographs had been taken

12

immediately after the storm. Bunker was not able to inspect the fallen limbs because the Golf Center had cut and removed them before placing them with other debris from the storm to clear the eighth green for play two days after the incident. Based on what Bunker could review, however, he opined that the tree exhibited good health and structure and the broken branches and remaining stubs, which were large in diameter, did not display any decayed wood or malformed branch attachments. Bunker also opined that the winds on September 14, 2008, caused the broken branches, not any condition of the tree.

{¶37} To bolster Bunker's opinion testimony, Appellants cited deposition testimony from several employees indicating that the tree had been maintained, subjected to regular inspections, and had appeared healthy before the storm.

{¶38} The Korengels opposed summary judgment on the issue of whether the tree limb was a physical-defect, presenting a report and deposition testimony from their expert arborist Mark Duntemann. Duntemann concluded, to a reasonable degree of probability, that the tree from which the limb fell had failed because of conditions, observable with a visual inspection, that showed the tree was not healthy and was a safety hazard. When making his determination that the tree was obviously in a weakened condition, Duntemann cited to, among other things, an "excessive" lean, an improper crown, which was "lion-tailed" and comprised of unhealthy sucker growth, and discolored leaves. In his opinion, the lean of the subject tree guaranteed a higher likelihood of a branch failure falling into the high use area of the green apron where Ryan was located at the time of the injury. Although Duntemann recognized that wind contributed to the failure, he contended that the tree's weakened condition also directly contributed to the failure, noting that other trees at the Golf Center did not fail that day.

13

{¶39} Duntemann based his opinion on his review of photographs and videos, taken shortly after the incident, of the tree, the fallen limbs, and the cut up debris; his own inspection of the tree six years later; and the Golf Center's maintenance records.

{¶40} The Korengels also attacked Appellants' evidence in support of summary judgment, pointing out the absence of any document "specifically" indicating that any inspection or maintenance work was performed on the subject tree, and any admissible statement from the Park District's former in-house arborist, or someone with similar training, that such act had been performed. Further, they cited deposition testimony from the manager of the Golf Center who indicated that he did not know of any work that had been performed on the tree since 2003, when he started in his position.

{¶41} Ultimately, at this stage in the proceedings, we must construe the evidence in the light most favorable to the nonmoving party—the Korengels—and may not make credibility determinations. Where, as here, several material facts are in dispute and the expert witnesses for the parties have presented conflicting opinions, the issue of whether the tree limb constituted a physical defect is not amenable to summary judgment.

{¶42} Appellants additionally argue the Korengels cannot not show the requisite causation between any alleged defect in the tree limb and Ryan's injury because the Korengels' weather expert, James Bria, admitted that the wind gusts at the time of the incident were at least 55-61 m.p.h. and that the wind had caused the branch to break.

{¶43} This argument, however, fails to consider concurrent causation. The relevant portion of the statutory physical-defect exception to liability requires only that the injury "is due to physical defects." R.C. 2744.02(B)(4). This requirement could be met if a trier of fact were to conclude that a physical defect in the tree limb was a concurrent, proximate cause of Ryan's injuries. To what extent the weaknesses found by Duntemann,

14

the tree expert, contributed to Ryan's injuries is unclear, but Duntemann's testimony creates factual disputes on whether the tree limb was a physical defect and whether it materially contributed to Ryan's injuries.

{¶44} We turn next to the Korengels' argument that another physical defect should be considered. They contend that weather monitoring equipment in the Golf Center's clubhouse known as the Data Transmission Network ("DTN") Center may not have been working properly and could be an additional physical defect that would support the physical-defect exception to immunity. The Korengels, however, did not amend the complaint to add that allegation. Appellants objected below to the insertion of a new issue into the case and continue that objection on appeal, and the trial court in its decision made no mention of the DTN Center, finding only a genuine issue of material fact remained with respect to whether the tree limb met the physical-defect requirement of the exception. In light of this record, we conclude that whether the DTN Center was a physical defect is not an issue in this case, as the Korengels did not actually or constructively amend the complaint to add this allegation.

{¶45} In sum, we hold there is evidence in the record from which a reasonable finder of fact might determine that Ryan's injury was due to a physical defect on the Golf Center grounds, namely the tree limb that struck him.

### *Negligence*

{¶46} Appellants argue that the Korengels cannot show the negligence element of the physical-defect exception. Liability for negligence is predicated upon an injury caused by the failure to discharge a duty owed to the injured party. Here, the Korengels must show the injury was caused by the negligence of the Park District's employees. Generally, when determining the negligence of the Park District's employees, traditional tort

15

concepts apply. *See, e.g, Kurz v. Great Parks of Hamilton Cty.*, 2016-Ohio-2909, 65 N.E.3d 96, ¶ 14 (1st Dist.); *Rosenbrook v. Bd. of Lucus Cty. Commrs.*, 2015-Ohio-1793, 33 N.E.3d 562, ¶ 20-21 (6th Dist.); *Dynowski v. City of Solon*, 183 Ohio App.3d 364, 2009-Ohio-3297, 917 N.E.2d 286, ¶ 24 (8th Dist). To establish negligence, a plaintiff must show a duty owed, a breach of that duty, and an injury proximately caused by that breach. *See, e.g., Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 217 (1998).

{¶47} ***Duty owed to Ryan and breach of duty.*** The parties do not dispute that the Park District employees owed Ryan the duty of care owed a business invitee. An owner of premises owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so its customers are not unnecessarily and unreasonably exposed to danger. *See, e.g., Presley v. Norwood,* 36 Ohio St.2d 29, 31, 303 N.E.2d 81 (1973); *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204, 480 N.E.2d 474 (1985). This includes an affirmative duty to protect invitees against known dangers and those with which reasonable care might be discovered. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359, 390 N.E.2d 810 (1979); *Perry v. Evergreen Realty Co.*, 53 Ohio St.2d 51, 372 N.E.2d 335 (1978).

{¶48} In this case, the duty of care was heightened because of Ryan's age of 12 years old on the date of the incident. *See Bennett v. Stanley*, 92 Ohio St.3d 35, 39, 748 N.E.2d 41 (2001), citing *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969) (observing that "[t]his court has consistently held that children have a special status in tort law and that duties of care owed to children are different from duties owed to adults."). The Park District was required to exercise care commensurate with the foreseeable danger so as to avoid injury to 12-year-old Ryan.

{¶49} An owner or occupier of land, however, is not an insurer of safety. *See Howard v. Rogers*, 19 Ohio St.2d 42, 47, 249 N.E.2d 804 (1969). Thus, there is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated or from those that the owner did not know about nor could have discovered with reasonable care. *Id.*

{¶50} The Korengels' surviving factual allegations of purported liability are that the Park District employees failed to exercise due care in the maintenance of the tree, permitting a hazardous tree to lean directly over the golf course where it was likely to fall on someone and cause serious injury or death. Second, the employees failed to exercise due care in the use of the siren, leaving Ryan without warning of the danger from the approaching storm and the negligently maintained tree on the eighth green.

{¶51} *Negligence in connection with tree maintenance*. The parties agree that generally, where premise-liability negligence revolves around the existence of a hazard or defect, a defendant will not be liable for negligence unless its agents or officers actively created the faulty condition, or that it was otherwise caused and the defendant had actual or constructive notice of its existence. *See Heckert v. Patrick*, 15 Ohio St.3d 402, 405, 473 N.E.2d 1204 (1984); *City of Cleveland v. Amato*, 123 Ohio St. 575, 577-578, 176 N.E.2d 227 (1931); *Leslie v. City of Cleveland*, 2015-Ohio-1833, 37 N.E.3d 745, ¶ 17 (8th Dist.).

{¶52} According to Appellants, the record lacks any evidence of a breach of the duty of care related to maintenance of the tree. They claim the Park District properly maintained the tree, as demonstrated by the deposition testimony of several employees and Bunker's expert report that the tree was in good health, growing normally, and had no defects that might have caused the limb that struck Ryan to break on September 14, 2008.

Further, deposition testimony from these same employee witnesses showed that the Park District never received any prior complaints about the tree, and the tree was routinely inspected. Thus, Appellants maintain the evidence in support of summary judgment shows that no Park District employee breached a duty of reasonable care with respect to the tree.

{¶53} The Korengels argue that there are numerous questions of material fact raised by both fact and expert witnesses rendering summary judgment inappropriate on this issue. They mainly point to the same evidence creating a genuine issue of material fact as to whether the tree limb was a physical defect. This includes the evidence undermining or contradicting Appellants' evidence that the tree in question had been maintained, including inspected, by a qualified individual, and Duntemann's opinion that the Park District's employees' failure to maintain the tree fell below the standard of care owed a golf patron, when the condition of the tree was so patently bad, and for such a long time, that employees should have discovered it and removed the tree.

{¶54} After our review, we conclude the evidence creates a genuine issue regarding whether the Park District employees fell below the required standard of care in this case. Ultimately, the credibility of and the weight to be given this conflicting evidence is for the trier of fact.

{¶55} *Open-and-obvious doctrine*. Appellants argue that if, as alleged by the Korengels, the tree was a hazard that should have been discovered before the storm, the hazardous condition was open and obvious, Ryan should have protected himself against it, and they owed no duty to Ryan with regard to the tree as a matter of law. In Ohio, if "a danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573,

788 N.E.2d 1088, ¶ 14. The issue of whether a risk was open and obvious may be decided by the court as a matter of law only when one conclusion can be drawn from the established facts. *Dynowski*, 183 Ohio App.3d 364, 2009-Ohio-3297, 917 N.E.2d 286, at ¶ 28.

{¶56} The Korengels, conversely, argue the open-and-obvious doctrine does not apply under these facts because Ryan was injured by a flying object, not a static condition. In support of their argument, they cite *Wolfe v. Bison Baseball, Inc.*, 10th Dist. Franklin No. 09AP-905, 2010-Ohio-1390. In *Wolfe*, the plaintiff, while standing in foul territory, was struck by an errant baseball thrown by a player during infield practice. *Id.* at ¶ 1. The plaintiff then brought a negligence action against the baseball team. The Tenth District Court of Appeals upheld the trial court's grant of summary judgment for the team, based on the plaintiff's assumption of the risk, but rejected the trial court's determination that the open-and-obvious doctrine should be extended to an object that "is not a 'static condition'—its precise location or potential to cause harm cannot be observed prior to its point of impact." *Id.* at. ¶ 14. *Compare Hupp v. Meijer Stores Ltd. Partnerships*, 5th Dist. Delaware No. 05CE070047, 2006-Ohio-2051 (open-and-obvious doctrine applied even though plaintiff shopper was struck by a rug that fell off a display shelf).

{¶57} We reject the Korengels' argument that, because the limb that injured Ryan was not a static condition but a flying object, the open-and-obvious doctrine could not apply in this case as a matter of law. A property owner may reasonably expect that individuals entering the premises will discover open and obvious dangers and take appropriate measures to protect themselves. *See*, *e.g.*, *Wolfe* at ¶ 11, and cases cited therein. The Korengels' position is essentially that the tree was a hazard in its static condition because it was foreseeable that a limb would break and land on the green on the

19

eighth hole of the golf course and strike a player at any time. The ensuing wind that impacted the tree at the time of Ryan's injury was not caused by any negligence of the Park District's employees, and the facts show that the increasingly windy conditions and the resulting effect on the trees in the area could be observed by the golfers on the course long before the limb broke and injured Ryan. Because of these distinguishing facts, we reject the Korengels' argument that the open-and-obvious doctrine cannot not apply in this case because Ryan was struck by a flying object.

{¶58} The Korengels argue also that the open-and-obvious doctrine does not apply because reasonable minds can only conclude that Ryan's injuries were caused by the active negligence of the employees. In support, the Korengels cite *Simmons v. Am. Pacific Ents., L.L.C.,* 164 Ohio App.3d 763, 2005-Ohio-6957, 843 N.E.2d 1271 (10th Dist.). In *Simmons*, the plaintiff delivery person was injured when he fell through a gap between a loading dock at a warehouse and his truck. *Id.* at ¶ 3. The trial court granted summary judgment to the defendant warehouse facility on the plaintiff's negligence claim after finding the gap was open and obvious. *Id.* at ¶ 17. The appellate court reversed because the facts were in dispute as to when an employee of the defendant removed the plate covering the gap, and the open-and-obvious doctrine would not apply if the employee's active negligent conduct had created the hazardous condition. *Id.* at ¶ 22-23.

{¶59} We do not find *Simmons* dispositive. First, the *Simmons* court did not hold that the open-and-obvious doctrine did not apply in the case as a matter of law. Instead, it held only that summary judgment was not warranted for the defendant based upon the open-and-obvious doctrine because a trier of fact could reasonably determine, when viewing the evidence in the light most favorable to the plaintiff, that an employee's

negligence had created a dangerous condition that the plaintiff lacked the ability to appreciate.

{¶60} Second, in this case, the facts are in dispute as to whether the Park District employees were negligent with respect to the maintenance of a tree, allegedly obviously defective in its static condition because it was likely to fail, resulting in a branch striking a golfer. Further, the instrumentality that caused movement in the limb of the tree was unquestionably not a human—it was the wind. Thus, the Korengels' reliance on *Simmons* is misplaced.

{¶61} Nonetheless, we cannot agree with Appellants that the facts supporting a determination that the Park District had constructive notice of a defective tree on a golf course would also require a finding as a matter of law that the Park District owed no duty to protect Ryan from the allegedly hazardous tree. The legal standard governing when a golf course has constructive notice of a defective tree on the course is not the same as the standard governing what is an open and obvious danger to a lay person 12 years old, who lacks the same discernment and foresight in discovering defects and dangers as older, and more experienced golf course landscapers and arborists. *See Bennett*, 92 Ohio St.3d at 39, 748 N.E.2d 41, citing *Di Gildo*, 18 Ohio St.2d at 127, 247 N.E.2d 732.

{¶62} Thus, we conclude that Appellants were not entitled to summary judgment based on the open-and-obvious doctrine, which, if established, would eliminate any duty to protect Ryan from the allegedly hazardous tree and prevent the Korengels from establishing the negligence requirement of the physical-defect exception to immunity.

{¶63} ***Negligence in connection with the failure to manually activate the storm siren***. The Korengels alleged that the Park District had a common-law duty to operate the Golf Center in a reasonably safe and appropriate manner, including to

21

maintain and use the clubhouse siren to warn Ryan of the storm hazards the employees knew or should have known were imminent, including hazards from the negligently maintained tree. And the Korengels took the position that the Park District assumed an additional duty to protect Ryan from severe weather based on its own policies and procedures and the advertisements on the course and score card given to Ryan. They contend a voluntary act, gratuitously undertaken, must be performed with the exercise of due care under the circumstances. *Briere v. Lathrop Co.,* 70 Ohio St.2d 166, 172, 258 N.E.2d 597 (1980).

{¶64} The advertisements informed golfers that "The Hamilton County Park District will attempt to notify golfers of potentially severe weather conditions (severe storm, lightening, etc.) by sounding one long blast. If you hear the signal, we highly recommend you seek shelter or vacate the course immediately. Three short blasts indicate reduced danger."

{¶65} Related to the duty to warn, the Park District equipped the golf course clubhouse with the ThorGuard warning system that continually monitored the atmosphere in the area and would automatically sound a "Red Alert" siren when there was a 90 percent chance of a lightning strike. But the "Red Alert" siren could be manually activated if deemed necessary. At the time of Ryan's injury, the Park District's Emergency Procedures handbook given to employees provided "All Hamilton County Park District clubhouses: Anytime that you feel the weather conditions warrant it, by all means, manually activate the 'Red Alert' on your system. You are always encouraged to err on the side of caution."

{¶66} In arguing that summary judgment should have been granted in their favor, Appellants focus on the scope of the duty owed to Ryan with respect to weather

warnings and the foreseeability of a wind-only violent storm affecting golfers on the course. They recognize that the par three course was not a play-at-your-own-risk course, and that employees did not activate the siren to warn Ryan of the impending danger from the windstorm. They contend, however, the evidence demonstrates there was no negligence.

{¶67} Citing deposition testimony of several employees, Appellants argue it was not standard or routine for the employees at the golf course to manually activate the siren or to otherwise warn for anything other than the threat of undetected lightening. To that end, Wells, the head golf professional at the Golf Center, testified that in his 27-year career he had never closed a golf course because of wind nor heard of any golf course closing just because of dangerous wind.

{¶68} Appellants argue also that the destructive wind-only event on an otherwise warm and sunny day was unprecedented and had not been experienced by anyone, including the Park District's Golf Center employees. They cite the deposition testimony of their weather expert Stephen Wistar, who noted that the event, caused by remnant winds from Hurricane Ike, was rare and had been described as a "once-in-100 year event." They further contend there was no evidence that the employees inside the clubhouse were aware of any risk of harm to Ryan. The clubhouse staff on duty at the time of Ryan's injury did not start working until after Ryan's group had teed off and neither knew Ryan was on the golf course. Further, they had not seen any tree limbs falling before the incident because of the wind, nor were they aware of any problems with the tree or any occurrence where a golf patron had been struck by a tree branch. They also were not aware of any severe warnings concerning the storm.

{¶69} Finally, they argue the evidence showed only that the clubhouse employees had not turned away any patrons before Ryan's injury. Thus, Appellants contend as a matter of law, the employees' conduct did not fall below the standard of care by failing to manually activate the siren.

{¶70} The Korengels, however, argue a reasonable trier of fact could conclude that the scope of the duty assumed and advertised by the Park District and documented in the employee handbook included a duty to warn of a severe windstorm that caused employees to fear for their own safety. This was based in part on the deposition testimony of the assistant golf professional for the Golf Center, who conceded that the handbook directive did not limit manual use of the siren to lightening-only situations, and agreed that the siren should be activated if the weather caused employees to seek shelter inside the clubhouse for their own safety.

{¶71} And the Korengels cite deposition testimony from several employees working at the time of the incident who had knowledge of the increasingly dangerous winds. This testimony showed the course starter left his post on the course at 1:30 p.m. and temporarily entered the clubhouse because he feared the developing winds and felt it was unsafe to be outside. Further, the testimony showed another employee left his ticket booth in the Golf Center's parking lot about ten minutes before the incident and entered the clubhouse because he was afraid of the wind.

{¶72} A third employee, the play coordinator who had told Ryan and his friends when they were on the fourth hole to pick up the pace of play, testified in his deposition that, an hour or two before the incident, he was aware of the trees blowing and that a branch might fall under those conditions. He specified, however, that he was only

24

concerned about the trees in the "forest," which he had to walk through, and not the trees on the course, which he considered to be well maintained.

{¶73} A fourth employee, who worked at the green-fee desk in the clubhouse, indicated in her deposition that she could see and hear from inside the clubhouse that the winds were increasing in strength before Ryan's injury.

{¶74} In summary, the Korengels argue there is competing evidence in the record and it is for the trier of fact to weigh it. Upon review of this evidence, we conclude that the Korengels presented sufficient evidence from which reasonable minds could conclude that the Park District's employees had breached a duty to use the siren to warn Ryan of the dangers from the approaching storm.

{¶75} *Proximate cause and "act of God."* Appellants contend that the Korengels cannot establish the requisite proximate cause, even if they can show employee negligence with respect to the tree. "The 'proximate cause' of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." *Piqua v. Morris*, 98 Ohio St. 42, 120 N.E. 300 (1918), paragraph one of the syllabus, quoted in *Bier v. City of New Philadelphia*, 11 Ohio St.3d 134, 135, 464 N.E.2d 147 (1984). The proximate-cause analysis in this case is complicated by the "act of God" defense, raised and supported by Appellants with respect to alleged negligence involving maintenance of the tree. This defense initially focuses on the role of the storm in causing Ryan's injury.

{¶76} Under Ohio law it is well settled that if an "act of God" is so unusual and overwhelming as to do damage by its own power, without reference to and independently of any negligence by the defendant, there is no liability. *Morris* at syllabus. However,

if the negligence of the defendant concurs with the other cause of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage.

(Internal citation omitted.) *Morris* at 49; *Bier* at 136.

{¶77} Strong wind may qualify as an "act of God" that bars a plaintiff's claim as a matter of law. *See Nackowicz v. Weisman Ents. Holdings, Inc.*, 12th Dist. Butler No. CA2010-11-312, 2011-Ohio-3635, ¶ 31 (winds of 50-60 m.p.h.); *Wright v. Ohio Dept. of Natural Resources*, Ct. of Cl. No. 2003-11755-AD, 2004-Ohio-3581, ¶ 4 (winds of 50-80 m.p.h.); *see also Stevens v. Jeffrey Allen Corp.*, 131 Ohio App.3d 298, 306, 722 N.E.2d 533 (1st Dist.1997) (trial court erred by failing to give instruction on "act of God" defense where evidence demonstrated that tree fell during a storm with winds the strength of a "weak tornado"). But for Appellants to obtain summary judgment on this issue, there can be no dispute based on the facts that the high wind was an "act of God" that was the sole cause of Ryan's injuries. *See Nackowicz* at ¶ 12, citing *Sutliff v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga App. No. 91337, 2009-Ohio-352, ¶ 20. *See also Bier*, 11 Ohio St.3d at 136, 464 N.E.2d 147.

{¶78} Here, there was undisputed evidence of a violent windstorm at the Golf Center at the time of Ryan's injury, but the actual speed of the wind gusts was in dispute. According to the Korengels' weather expert, James Bria, the approximate speed of the gusts was in the range of 55-61 m.p.h. Appellants' weather expert, Stephen Wistar, opined

the wind gusts were in the range of 60-75 m.p.h. Further, there was disputed evidence of negligence that allegedly contributed to the injury. Thus, Appellants were not entitled to summary judgment on the Korengels' claims based on the "act of God" defense.

{¶79} Because the Korengels presented some evidence that, if believed, would allow a reasonable person to find that the Appellants' negligence, either alone or in combination with an "act of God," proximately contributed to Ryan's injuries, the Appellants were not entitled to summary judgment on this issue, which would preclude a finding of liability.

### Defenses to Reinstate Immunity

{¶80} Appellants contend that even if the physical-defect exception applies to impose liability on the Park District for its employees' negligence, immunity would be reinstated under R.C. 2744.03(A)(3) or (A)(5). R.C. 2744.03(A)(3) restores immunity for the political subdivision "if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C. 2744.03(A)(5) restores immunity for the political subdivision "if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." As we explained in the first appeal, these defenses "protect the exercise of discretion and judgment" and "are not meant to protect conduct in carrying out an activity." *R.K. I*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 31.

{¶81} Appellants argue that "decisions regarding inspection and maintenance of trees are discretionary decisions." But as we noted in *R.K. I,* when we rejected the same argument, decisions regarding routine maintenance and operation such as maintaining a tree so as not to become a "safety hazard" do not involve the exercise of judgment as contemplated in R.C. 2744.03(A)(3) and (5). *R.K. I* at ¶ 32 and 35. *See Perkins v. Norwood City Schools*, 85 Ohio St.3d 191, 707 N.E.2d 868 (1999); *Stanfield v. Reading Bd. of Edn.*, 2018-Ohio-405, 106 N.E.3d 197, ¶ 18 (1st Dist.) ("the decision by the [School] Board's employees to use netting, instead of repairing or replacing the [defective] netting, does not result from the exercise of discretion and judgment.").

{¶82} Because of this, the Park District is not entitled to the defenses of R.C. 2744.03(A)(3) and (5) with respect to the claim for liability related to the maintenance of the tree. *R.K. I* at ¶ 35. We emphasize, however, that this claim for liability must be distinguished from the Korengels' claim based on the design of the golf course, a claim implicating the planning discretion of the Park District, protected under R.C. 2744.03(A)(3), and for which we have already held immunity applies. *Id.*

{¶83} Appellants argue also that manually activing the siren, part of the lightening-detection system, to warn of a windstorm is not routine operation of the equipment. They claim, instead, that the manual use of the siren involves employee judgment that triggered the defense of R.C. 2744.03(A)(5) for decisions involving the use of equipment, and that the defense was not overcome because the Korengels failed to establish employee recklessness.

{¶84} In our first appeal of this case, we held that the Park District's decision to "use" the siren is a decision involving "routine operation" and not the type of decision protected by the defense of R.C. 2744.03(A)(5). *See id.* at ¶ 32 and 37. We did not

specifically address, however, whether the manual use of the siren involves the type of employee judgment protected by R.C. 2744.03(A)(5), an issue developed through discovery.

{¶85} Our review of the record convinces us that manually activating the siren also falls under "routine operation." The employee handbook directs the clubhouse employees to manually activate the siren when the weather conditions warrant its use, and "to err on the side of caution" when making the decision. The record demonstrates, thus, that the Park District installed the siren and directed employees to manually activate it to warn of certain weather conditions. The decision of how to use equipment has been made and is immunized under R.C. 2744.05(A)(5). *See Hall v. Fort Frye Local School Dist. Bd. of Edn.*, 111 Ohio App.3d 690, 699-670, 676 N.E.2d 1241 (4th Dist.). Once that policy was put into effect, the Park District's operational procedures for warning golfers must be carried out in a reasonably safe manner. Carrying out those procedures is a routine decision requiring little judgment or discretion, especially when the employees are directed to act cautiously.

{¶86} If the employees were negligent in failing to manually activate the siren, then R.C. 2744.03(A)(5) does not reinstate immunity for that negligent operation. *See R.K. I*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 32, citing *McVey v. City of Cincinnati*, 109 Ohio App.3d 159, 163, 671 N.E.2d 1288 (1st Dist.1995).

### *Conclusion*

{¶87} To summarize, we conclude questions of fact remain as to whether the allegedly unmaintained tree limb that undisputedly struck and injured Ryan during a windstorm was a "physical defect," whether the Park District employees were negligent in the maintenance of the tree and negligent in failing to activate the storm siren, and if such

negligence proximately caused Ryan's injury along with the windstorm. We further find there are no facts to support the claim that the Park District employees were reckless in their supervision of Ryan. Therefore, the Park District is immune from suit for that claim. The trial court on remand should enter summary judgment for Appellants on the portion of Count 3 containing that claim, and comply with our prior mandate to enter judgment on the pleadings for Appellants, and the other defendants, on the claims as specified in *R.K. I.* The assignment of error, therefore, is overruled in part and sustained in part.

{¶88} Ryan's two negligence claims, set forth in Count 2 and the remaining part of Count 3, and his family's derivative loss-of-consortium claims, set forth in Counts 7-8, are still intact and remain to be resolved on remand.

Judgment accordingly.

CROUSE, J., concurs.
MYERS, P.J., concurs in part and dissents in part.

MYERS, P.J., concurring in part and dissenting in part.

{¶89} I concur with the majority that questions of fact remain as to whether the tree limb was a physical defect, entitling the Korengels the benefit of the physical-defect exception to immunity found in R.C. 2744.02. I disagree, however, that the Korengels can avail themselves of this exception as to the warning siren.

{¶90} R.C. 2744.02(B)(4) provides that a political subdivision is liable "for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds" used in connection with a governmental function. I would find that this statute requires that the defect and the employee negligence be linked. In other words, the employee negligence must specifically relate to the defect that caused the injury. Here, the alleged negligent maintenance of the tree specifically relates to the physical defect in

30

the tree which caused the injury. Thus, if proven, the Korengels may avail themselves of the exception.

{¶91} However, the analysis with respect to the siren leads me to a different conclusion. As the majority correctly found, there is no defect in the siren. I would find that if there is no defect in the instrumentality (the siren), the physical-defect exception cannot apply. The siren did not cause the injury. And the employees' alleged negligent failure to manually deploy the siren is not related to the physical defect (the tree). Thus, the failure to warn claim is a negligence claim, with no physical-defect exception to save it. And, I agree with the majority that there is insufficient evidence of any recklessness on the part of the employees. I would find that Appellees are entitled to immunity for Appellants' failure-to-warn/failure-to-activate-the-siren claim.

{¶92} I concur in all other respects with the majority.

Please note:

The court has recorded its own entry on the date of the release of this opinion.