STEVENS, Admr., et al., Appellants,

v.

JEFFREY ALLEN CORPORATION, Appellee; Bentley Meisner
Association, Inc., Appellee and Cross–Appellant.

[Cite as *Stevens v. Jeffrey Allen Corp.* (1997), 131 Ohio App.3d 298.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–960248 and C–960264.

Decided Dec. 5, 1997.

[black redaction bars]

*Carl W. Zugelter,* for appellants.

*Thomas Mack,* for appellee Jeffrey Allen Corporation.

*Ralph F. Mitchell* and *Michael P. Foley,* for appellee Bentley Meisner.

MARIANNA BROWN BETTMAN, Judge.

## PROCEDURAL POSTURE

This is a wrongful death action brought by Ronald Stevens as personal representative of the estate of his wife, Shirley. Shirley Stevens was killed when, during a severe thunderstorm, a large oak tree on the grounds of the Norwood Public Library fell onto the van she was driving. Stevens brought an action against the Board of Trustees of the County Library District of Hamilton County, Ohio ("Public Library"), Bentley Meisner ("Meisner"), a landscape architecture firm, and the Jeffrey Allen Corporation ("Allen Corporation"), a grounds maintenance contractor. The Public Library was dismissed with prejudice during trial. After hearing the evidence, the jury returned a 6–2 verdict in favor of Meisner and the Allen Corporation. Stevens appeals from the judgment entered on the jury's verdict. Meisner purports to file a cross-appeal, which we consider to be an assignment of error to prevent reversal, as Meisner prevailed below. R.C. 2505.22; *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371.

## FACTS

In 1990, the Public Library decided it needed help managing lawns and trees at all of its branch libraries. In December 1990, Meisner submitted a proposal to the Public Library. Under the proposal, which was accepted, Meisner was to perform three tasks: site assessment, development of a site improvement plan with recommendations for the resolution of maintenance issues, and development of contracts to be bid for various maintenance tasks. As part of the third task,

Meisner developed a grounds maintenance program. In July 1992, the contract to carry out the grounds maintenance program ("Grounds Maintenance Contract") was awarded to the Allen Corporation. The parties to the Grounds Maintenance Contract are the Public Library and the Allen Corporation.

One of the provisions of the Grounds Maintenance Contract is a Tree Maintenance Program, which required a semi-annual inspection by a certified arborist. The inspection was to include the following:

1. general health of the trees;

2. disease and insect infestations and recommendations for control;

3. recommendations for remedial measures for nutrient deficiencies;

4. identification of trees in deteriorating condition and recommendations for remedial measures to improve their health;

5. identification of trees which are dead or dying for which no remedial action is possible, and the reasons, if possible.

The Allen Corporation had the responsibility, pursuant to its contract with the Public Library, to hire the certified arborist to conduct the tree inspections required under the contract.

At the same time that the Grounds Maintenance Contract was awarded to the Allen Corporation, the Public Library Board approved a separate contract in which it agreed to pay Meisner to monitor the work to be done under the Grounds Maintenance Contract and to provide six-month status reports to the Public Library about the grounds maintenance work. Each month, the Allen Corporation submitted applications for payment to Meisner, which certified that the work had been completed. Meisner then forwarded the payment request to the Library, which disbursed the funds directly to the Allen Corporation.

Before Shirley Stevens's death, two tree inspections should have been performed by a certified arborist under the terms of the Grounds Maintenance Contract between the Library and the Allen Corporation. Neither occurred. The Allen Corporation did not hire an arborist until one month after Shirley Stevens's death. At no time before Stevens's death did Meisner provide the information about the failure to inspect the trees to the Public Library, although Meisner did notify the Public Library that the Fall 1992 inspections would be delayed.

On June 10, 1993, a severe thunderstorm accompanied by hail and high winds occurred. At trial, this storm was characterized, without contradiction, by a meteorology expert as having the strength of a weak tornado. It was during this storm that an oak tree on the Norwood Public Library grounds fell onto Shirley Stevens's van.

Expert testimony on the felled tree was based on photographs because the tree was removed before it could be inspected. The expert testimony was in conflict about the extent of pre-existing disease in this tree, and whether it would have fallen without the storm. Immediately after the storm, a companion red oak which was still standing was inspected by the Public Library. Two different certified arborists recommended its prompt removal because it was a hazard.

After hearing all the evidence, the jury found in favor of the defendants. This appeal followed.

## ASSIGNMENTS OF ERROR

The first assignment of error contains the underlying complexities of this case. We state the assignment of error verbatim:

"The trial court erred to the prejudice of plaintiffs-appellants in refusing to instruct the jury on negligence, the elements of the act of God defense, by giving an improper instruction on proximate cause, failing to define intervening cause and failing to advise the jurors of the burden of proof in an affirmative defense."

The gravamen of this assignment of error and of this appeal is that negligence principles got lost in the instructions and that contract principles were incorrectly substituted. We agree. This is a tort case. It is not a contract action. The jury instructions and special interrogatories were a confusing and a legally incorrect hybrid of contract and tort principles. A new trial is required, although for the reasons set forth in this analysis, the retrial is ordered only as to Stevens and the Allen Corporation.

## TORT LIABILITY

We begin with the basic duty in this case. In the lead case of *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 15 OBR 516, 473 N.E.2d 1204, the Ohio Supreme Court considered injuries to a motorcyclist from a tree limb which fell onto a rural highway. The first syllabus paragraph of *Heckert* reads as follows:

"Although there is no duty imposed upon the owner of property abutting a rural highway to inspect trees growing adjacent to the roadway or to ascertain defects which may result in injury to a traveler on the highway, an owner of land having actual or constructive knowledge of a patently defective condition of a tree which may result in injury to a traveler must exercise reasonable care to prevent harm to a person lawfully using the highway from the falling of such tree or its branches." *Id.* at 402, 15 OBR at 516, 473 N.E.2d at 1205.

The court in *Heckert* went on to state that an urban landowner has a greater duty to inspect its trees than a rural landowner, citing with approval Section 363(2) of the Restatement of Law 2d, Torts (1965):

"[A] possessor of land in an *urban* area is subject to liability to persons using a public highway for physical harm arising" from his failure to exercise reasonable

care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway. (Emphasis *sic.* ) *Heckert* at 404, 15 OBR at 518, 473 N.E.2d at 1207.

The court expressly adopted the distinction between the duties of an urban and a rural landowner, noting:

"In the main, the cases applying the distinction often state that the urban owner has a duty of reasonable care relative to the tree, including inspection to make sure it is safe. The duty placed upon the urban landowner, who has only a few trees, is not a heavy burden. This is in contrast to the rural landowner who may have trees of forest dimensions which would impose a duty of immense proportions, and constitute an onerous burden." *Heckert, supra,* at 405, 15 OBR at 518, 473 N.E.2d at 1207. See, also, *Estate of Durham v. Amherst* (1988), 51 Ohio App.3d 106, 554 N.E.2d 945.

■ Thus, just like any other urban landowner, the Public Library had a duty in this case to ensure that its trees were not endangering travelers on the highway. The duty only arises when a landowner has actual or constructive knowledge of the defective condition of a tree. See Restatement of the Law 2d, Torts (1965) 259, Section 363, Comment *e.*

## INAPPLICABILITY OF CONTRACT LAW

The issue which became very confused at trial was the legal significance of the Grounds Maintenance Contract. The appellees incorrectly persuaded the trial court that this was a contract case and that the liability of Allen and Meisner was controlled by *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780.

■ *Sonitrol* involved a contract between a business and a security alarm company to protect the business premises with a security system after the business was closed for the day. An employee who had activated the system after closing was forced back into the building and raped. The Ohio Supreme Court held that the security alarm contract was clearly to protect property only, not people, that the employee was only an incidental beneficiary of the contract, and that the security alarm company owed no duty of protection to the employee. The court held that the case was governed by Sections 314 and 315 of the Restatement of the Law 2d, Torts (1965) 116, 122, that hold that unless a special relationship is found to exist, no duty may be imposed upon a defendant to protect third persons.[1]

---

1. In *Sonitrol,* the court was asked to adopt Section 324A of the Restatement of the Law 2d, Torts (1965) 142, and particularly subsection (c), which was the subsection on which the

We first hold that *Sonitrol* has no application to the case at bar. Unlike the contracting parties in *Sonitrol,* the Public Library, like all landowners, has a common-law duty to prevent harm to the traveling public from any defective trees of which it has actual or constructive notice. In this case, this duty was owed to Shirley Stevens as a member of the traveling public. While the Library cannot delegate this duty away, it can hire others to help perform this duty, which is precisely what it did. It hired the Allen Corporation to hire a certified arborist to tell it which trees were bad, and it hired Meisner to tell it if the Allen Corporation was doing its job. See, generally, *Schaefer v. D & J Produce, Inc.* (1978), 62 Ohio App.2d 53, 16 O.O.3d 108, 403 N.E.2d 1015.

■ The duties of Meisner and the Allen Corporation to Shirley Stevens and other members of the traveling public are tort duties, governed by Section 324A of the Restatement of the Law 2d, Torts (1965) 142, which we hold applicable to this case. Accordingly, the jury instructions on "breach of contract," "duty to others/intended beneficiary," and "findings" were erroneous. The instruction on "contract," though a correct statement of law, should not have been given in this case because there were no contract issues for the jury to decide. The instructions on "proximate cause" and "death, compensatory damages" are an incorrect hybrid of tort and contract law. Finally, the special interrogatories are also an incorrect mixture of tort and contract theories.[2]

## SECTION 324A, RESTATEMENT OF TORTS SECOND

Section 324A of the Restatement of the Law 2d, Torts reads as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increased the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement of the Law 2d, Torts (1965) 142, Section 324A.

---

appellants in that case relied. The court neither adopted nor declined to adopt Section 324A, finding it inapplicable to the case before it.

**2.** Stevens repeatedly objected to the above instructions and proposed instructions that embodied some of the correct negligence principles, properly preserving this error on appeal.

We quote the following examples from the Restatement because they perfectly illustrate the respective roles of the Public Library (which is no longer a party), the Allen Corporation, Meisner, and Shirley Stevens as a member of the public:

"2. The A Telephone Company employs B to inspect its telephone poles. B negligently inspects and approves a pole adjoining the public highway. Because of its defective condition the pole falls upon and injures a traveler upon the highway. B is subject to liability to the traveler.

"3. The A company employs B as a superintendent of building construction work. One of his duties to A company is to inspect a scaffold erected by an independent contractor to make sure that it is safe for A Company's workmen. B negligently fails to inspect the scaffold, and as a result of its defective condition, which would have been discovered by proper inspection, the scaffold collapses and C, a workman employed by A Company, is injured. B is subject to liability to C." Restatement of the Law 2d, Torts, *supra,* Section 324A, Comment *d,* illustrations 2 and 3.

As is also noted in the comments to the Restatement, the employed party's liability to the injured party is *in addition* to the person to whom the employed party has agreed to render the services.

The Public Library hired Meisner and the Allen Corporation to carry out its duty to the public. To the extent that either defendant was negligent in the undertaking for which the Library hired it, that defendant is liable in tort to Stevens as a member of the traveling public. Both subsections (a) and (b) of section 324A are implicated here. Proof of either is sufficient to impose liability. *Wissel v. Ohio High School Athletic Assn.* (1992), 78 Ohio App.3d 529, 605 N.E.2d 458. This liability in tort to Shirley Stevens is in addition to any liability for breach of contract between the defendants and the Public Library, which is not part of this lawsuit.

For some unexplained reason, at the very end of the trial, Stevens dismissed its negligence claim against Meisner.[3] Thus, on remand of this case, only the negligence claims against the Allen Corporation may be retried.

## PROXIMATE CAUSE

The trial court permitted testimony throughout the trial, including expert testimony, about the weather the night of June 10, 1993. If the jury had decided, under proper tort instructions, that Allen (or Meisner or both) had breached a duty to Shirley Stevens, the jury still had to decide the role of the storm in

---

**3.** At oral argument, Stevens's counsel conceded again that Stevens's negligence claim against Meisner had been dismissed. We express no opinion on whether this claim can be revived.

Stevens's death. However, the trial court refused to give the "act of God" instruction.[4] This was error. The "act of God" instruction was absolutely crucial for the jury to make a decision about proximate cause in this case. This instruction clearly and accurately explains the law on causation when there is disputed evidence of negligence and undisputed evidence of a violent storm.[5]

## SUMMARY OF FIRST ASSIGNMENT OF ERROR

Stevens's first assignment of error is sustained. Retrial is ordered between the Allen Corporation and Stevens based on the negligence principles of Section 324(A), Restatement of Law 2d, Torts, *supra.* There are no contract issues for the jury to determine. The "act of God" instruction should be given in a retrial.

## REMAINING ASSIGNMENTS OF ERROR

We will address those remaining assignments of error necessary for the retrial of this matter.

█ Stevens argues in the second assignment of error that the trial court erred by refusing to admit as substantive evidence the partial transcripts of Cecelia Bradford's and Gary Meisner's depositions. We find no abuse of discretion in limiting the use of this testimony to impeachment only. The assignment of error is overruled.

---

4. Stevens proposed the following instruction, taken from the Ohio Jury Instruction manual:
    "ACT OF GOD. A defendant cannot be held responsible for (any injury) (damages) caused solely by an act of God. An act of God is any event that is caused by natural forces beyond human control, such as earthquake, violent storm, lightning or flood, and that could not be reasonably anticipated or guarded against.
    "SOLE CAUSE. A defendant cannot escape responsibility for (any injury) (damages) unless it was proximately caused solely by an act of God. If (the injury) (damages) (was) (were) proximately caused by the negligence of the defendant combined with an act of God, the defendant is responsible.
    "BURDEN. The burden of proving that the (injury) (damages) (was) (were) caused by an act of God which could not have been reasonably anticipated and which was the sole proximate cause of the damage rests upon the defendant.
    "CONCLUSION. If you find that the defendant was negligent and that his negligence, either alone or in combination with an act of God, proximately contributed to cause plaintiff's (damage) (injury), then your verdict must be for the plaintiff. If you fail to find that the defendant was negligent, or if you fail to find that his negligence, if any, was a proximate cause, or if you find that circumstances constituting an act of God were the sole proximate cause of plaintiff's (damages) (injury), then your verdict must be for the defendant." 1 Ohio Jury Instructions (1996), Sections 7–27(1), (3), (5), and (6).

5. Although special interrogatory number three has a bearing on this issue, in light of the incorrect emphasis on the contract claims in the jury instructions and the other special interrogatories, this will not save the verdict in this case.

In the third assignment of error, Stevens argues that the trial court erred in excluding the testimony and arboricultural survey of Richard Ecabert. The Allen Corporation hired Ecabert to undertake the inspection of the trees on library property. As a result of this inspection, he created a comprehensive survey, reporting his findings. Ecabert testified that the Allen Corporation did not contact him about performing the inspections until July of 1993. Jeffrey Bresnen, an employee of the Allen Corporation, testified that he had asked Ecabert to undertake the inspections as early as October 1992, and then again in April 1993. The actual inspections began no earlier than July of 1993.

Ecabert was not listed as an expert witness by Stevens prior to this trial. Therefore, the trial court was within its discretion in excluding any expert opinions he offered. See *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444, syllabus; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 86, 19 OBR 123, 125–126, 482 N.E.2d 1248, 1251. The court also properly excluded Ecabert's proffered testimony about work performed after June 10, 1993, which included impermissible references to subsequent remedial measures. Evid.R. 407. However, the trial court did unduly limit Ecabert's testimony as a fact witness. On retrial, he should be allowed to testify about his personal qualifications, and to describe his education and training, including his personal ability to identify root rot and hazardous trees. He should also be permitted to testify as to exactly what the Allen Corporation hired him to do and when and why, if he was told.

The third assignment of error is sustained in part and overruled in part.

In the final assignment of error, Stevens argues that the trial court erred in admitting into evidence storm damage that occurred in Mt. Airy Forest on the day of the accident. Stevens argues that this evidence is irrelevant to the intensity, severity, and nature of the thunderstorm that occurred in the area of the Norwood library on June 10, 1997. This assignment of error is moot in the case before us. However, we have ordered that the "act of God" defense must be given in a retrial. With the correct instruction, the evidence at issue in this assignment of error would be proper.

Despite Stevens's contentions, the defendants presented sufficient evidence connecting the storm damage in Mt. Airy Forest and the storm damage suffered in Norwood. Dr. Walter A. Lyons, who holds a Ph.D. in atmospheric sciences, reviewed meterological information collected by various sources, including the National Climatic Data Center and the National Weather Service. He testified for the defendants that based upon this data, on June 10, 1993, a severe thunderstorm, including a series of microbursts characterized by intense winds, struck the Cincinnati area. The storm moved from west to east in a twelve-mile

corridor that included both Mt. Airy Forest and the site of the accident in Norwood. Because of the evidence that the storms were part of the same series of microbursts, evidence that hundreds of trees in Mt. Airy Forest were damaged or felled as a result of the storm was probative, relevant evidence supporting the "act of God" affirmative defense.

### ASSIGNMENT OF ERROR TO PREVENT REVERSAL

Defendant-appellee Bentley Meisner has filed a cross-appeal, recharacterized as an assignment of error to prevent reversal, arguing that the trial court erred in not granting its motion for a directed verdict on all claims against Meisner by Stevens.

We will not consider the merits of this assignment of error. As we discussed in the first assignment of error, there are no contract issues for the jury to decide in this case against either defendant, and Stevens dismissed the negligence claim against Meisner. Consequentially, on remand, there are no remaining claims against Meisner.

Accordingly, the judgment of the trial court is reversed, and this cause is remanded for a new trial on the negligence claims against the Allen Corporation.

*Judgment reversed*
*and cause remanded.*

PAINTER, P.J., and DOAN, J., concur.