[Cite as *Colwell v. Bob & Shawn Ents., L.L.C.*, 2026-Ohio-976.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| TIFFANY COLWELL, | : | |
| Appellant, | : | CASE NO. CA2024-11-131 |
| | : | OPINION AND |
| - vs - | | JUDGMENT ENTRY |
| | : | 3/23/2026 |
| BOB & SHAWN ENTERPRISES LLC, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2023-09-1935

O'Connor, Acciani & Levy, LPA, and Kory A. Veletean, for appellant.

Davidson Law Offices Co., LPA, and David T. Davidson, for appellees.

### **O P I N I O N**

**BYRNE, P.J.**

{¶ 1}  Tiffany Colwell appeals the decision of the Butler County Court of Common Pleas, General Division, granting summary judgment to Bob & Shawn Enterprises, LLC, dba Our Place Saloon, on Colwell's negligence claim. The common pleas court found that Colwell's injury resulting from her being hit in the face by a flying umbrella was, as a

matter of law, the result of an unforeseeable "act of God."[1] For the reasons outlined below, we reverse and remand this matter to the common pleas court for further proceedings.

## I. Factual and Procedural Background

### A. Robert King's Businesses

{¶ 2} Robert King owns three limited liability companies that each operate local restaurant/bar establishments: (1) Neighbors Sports Grill, LLC operates "Neighbors Sports Grill" in Trenton, Butler County, Ohio; (2) Doc's Place Pub 1, LLC operates "Doc's Place Pub" in Lebanon, Warren County, Ohio; and (3) Bob & Shawn Enterprises, LLC operates "Our Place Saloon" in Trenton, Butler County, Ohio. We will refer to Bob & Shawn Enterprises, LLC and "Our Place Saloon" collectively as "the Saloon".

### B. The Umbrella Incident

{¶ 3} Tiffany Colwell was a regular patron of the Saloon. On October 10, 2021, Colwell went to the Saloon to watch a football game with friends. Once there, and while seated at a table on the bar's outdoor patio, a sudden wind dislodged her table's open umbrella from its pedestal base.[2] The wind lifted the umbrella up from its pedestal base and through a center hole in the table. Upon rising above the table, the umbrella was blown sideways, striking Colwell in the face and breaking her nose. This incident was recorded on video, and still images taken from that video were introduced into the record. Colwell received medical treatment for her injury.

### C. Colwell's Lawsuit

{¶ 4} In September 2023, Colwell filed suit against the Saloon raising a single

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

2. At oral argument, it was suggested that there was an evidentiary dispute as to whether a pedestal base was in use for the umbrellas at the Saloon. The record does not support the existence of such a suggested dispute.

claim of negligence.[3] The parties took the depositions of Colwell and King. We will summarize relevant testimony from those depositions.

## 1. Robert King's Testimony Concerning the Umbrella

**{¶ 5}** King testified that he purchased the Saloon in 2013. He installed the outdoor patio in 2021, just a "few months" prior to the umbrella incident. The patio contained three metal tables. Each table had an umbrella installed in a center hole. The umbrellas were secured by a base that prevented back-and-forth movement, but not up-and-down movement. On the day of the incident, the bases did not have screws or any other features to secure the umbrellas in place, and they were not designed with such a feature.

**{¶ 6}** King testified that, typically, the three umbrellas would be brought inside at the end of the business day. There was no employee policy or procedures at the Saloon for removing umbrellas from the patio under certain weather conditions. Yet King testified that it was "common sense" to him that if it was windy out, he should take the umbrellas down to secure them.

## 2. Evidence Concerning Weather Conditions

**{¶ 7}** The summary judgment record is limited as to the weather conditions on the day of the umbrella incident. King testified he did not know the exact temperature on October 10, 2021. He recalled that it was sunny and nice enough for people to be sitting outside, drinking. King also noted that when he observed security video from earlier that day, "it was fine" but that the wind picked up suddenly. He thought that perhaps a weather front was moving through. He had no idea as to what speed the wind was gusting that day.

---

3. Within her complaint, Colwell also named "Good Times Great People, LLC" as a defendant. Colwell subsequently dismissed Good Time Great People, LLC as a defendant with prejudice, so Good Times Great People, LLC is not a party to this appeal.

**{¶ 8}** Colwell testified that it was windy on the day of the umbrella incident, and that it was windy when she sat down at the patio table. Prior to the incident, she noticed the umbrella moving back and forth "a little bit" but it was not going up and down until a "strong wind"[4] caused the umbrella to dislodge from the table and strike her.

### 3. Summary Judgment Decision

**{¶ 9}** Following discovery, the Saloon moved for summary judgment. The Saloon argued that it was not subject to liability as a matter of law because the umbrella incident was an unforeseeable "act of God." After briefing, the common pleas court issued a written decision granting the Saloon's summary judgment motion. The trial court first noted that there was no testimony in King's deposition indicating any prior incidents of umbrellas dislodging from the patio tables, and that Colwell also stated she had never observed any problems with the umbrellas becoming dislodged. The court also found that no expert testimony had been submitted indicating that the circumstances or placement of the umbrellas were negligent and what reasonable steps should have been taken to prevent the accident. Finally, the court determined that there was "zero evidence" that the wind was "usually [sic] fast or heavy" on the day in question, October 10, 2021.[5] Therefore, the trial court concluded that the proximate cause of the incident was an unforeseeable wind gust, i.e., an "act of God," barring Colwell's claim as a matter of law.

**{¶ 10}** Colwell appealed, raising one assignment of error for review.

---

4. "Strong wind" was not Colwell's statement, but instead the characterization of the deposing attorney. However, Colwell agreed with the characterization. Colwell had previously described the conditions as "windy."

5. The court's full statement was, "There is zero evidence that the winds on October 10, 2021 were *usually* fast or heavy, and zero evidence that any of the umbrella/table combinations had had prior similar issues." (Emphasis added.) This is an awkward sentence as phrased. The court probably meant "unusually," rather than "usually." Or, if it used the word "usually" intentionally, it may have been stating that no evidence had been submitted to show that very strong wind gusts were a "usual" occurrence at the Saloon, making an incident like the one that occurred more foreseeable to the Saloon. But because our review of the court's summary judgment decision is de novo, we do not need to determine with certainty what the court intended to say in this particular sentence.

## II. Law and Analysis

{¶ 11} Colwell's sole assignment of error states:

THE TRIAL COURT ERRED WHEN GRANTING THE MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S NEGLIGENCE CLAIM.

{¶ 12} In her single assignment of error, Colwell argues the trial court erred by granting summary judgment to the Saloon on her claim of negligence.

### A. Summary Judgment Standard of Review

{¶ 13} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.).

{¶ 14} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 10 (12th Dist.), quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.).

{¶ 15} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116, ¶ 18 (12th Dist.). To satisfy this initial burden, the moving party must be able to point to evidentiary materials of the type listed

in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Adkins v. Middletown*, 2025-Ohio-317, ¶ 60 (12th Dist.). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 2022-Ohio-4445, ¶ 21 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

{¶ 16} "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.). De novo means that this court uses the same standard that the trial court should have used. *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.). Therefore, when conducting a de novo review, this court independently reviews the trial court's decision without giving it any deference. *Bunker Hill*, 2024-Ohio-875, at ¶ 9. "When an error is found in a trial court's decision granting a summary judgment motion, the trial court's decision is generally reversed and the matter is remanded to the trial court for further proceedings." *Guzzetta v. Guzzetta*, 2024-Ohio-294, ¶ 17 (12th Dist.).

### B. The Elements of Negligence

{¶ 17} In order to be entitled to summary judgment, the Saloon was required to

demonstrate that Colwell would be unable to prove one or more of the essential elements of a negligence claim if the matter were brought to trial. Those elements are that (1) the Saloon owed Colwell a duty of care, (2) the Saloon breached the duty of care, and (3) as a direct and proximate result of the Saloon's breach, Colwell was injured. *See Oliphant*, 2020-Ohio-229, at ¶ 32 (12th Dist.). We will examine these elements of negligence in turn.

## C. Duty of Care

{¶ 18} Without a duty, there can be no legal liability for negligence. *Uhl v. Thomas*, 2009-Ohio-196, ¶ 10 (12th Dist.). "The duty element of negligence . . . is a question of law for the court to determine." *Wallace v. Ohio Dept. of Commerce*, 2002-Ohio-4210, ¶ 22. *See also Mussivand v. David*, 45 Ohio St. 3d 314, 318 (1989).

{¶ 19} Tort law is largely based on case law, rather than statutes, and the precise focus of the duty analysis can seem to shift depending on the case. As a result, "the concept of duty in negligence law is at times an elusive one." *Wallace* at ¶ 23. But in general, "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability." *Gladon v. Greater Cleveland Regional Transit Auth.*, 1996-Ohio-137, ¶ 8. These classifications depend on "the status of the person who enters upon the land of another." *Id.* at ¶ 9. A person "who rightfully come[s] upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner" is an invitee. *Id.* In the case before us, there is no dispute that Colwell was a business invitee of the Saloon when she was injured.

{¶ 20} "The owner or occupier of a business owes a duty of ordinary care to maintain the premises in a reasonably safe condition, so as to not expose business invitees to unreasonable or unnecessary dangers." *Matthews v. Texas Roadhouse Mgt. Corp.*, 2020-Ohio-5229, ¶ 7 (12th Dist.). That is to say, "[t]he business owner has a duty

to warn invitees of latent or concealed dangers the owner knows of, or has reason to know of, that invitees would not expect to discover or protect against." *Kemme v. Seltzer Holdings, L.L.C.*, 2020-Ohio-3142, ¶ 12 (12th Dist.). While a business owner is not an insurer for customers on the premises of the business, the owner does have a duty to protect customers when there is a foreseeable risk of which the owner knows or should know. *Koralewski v. J-Ard Corp.*, 133 Ohio App.3d 18, 21 (6th Dist.1999). Thus, on the sole basis that Colwell was a business invitee of the Saloon, the first element of negligence—a duty of care—is satisfied in this case.

{¶ 21} But Ohio courts at times also discuss the duty element of negligence in a more specific way, analyzing whether the specific harm at issue in the case was foreseeable. *See Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 24-25, quoting *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St. 3d 75, 77 (1984) and *Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 339 (1934) ("The existence of an actor's duty to another person usually arises from the foreseeability of injury to someone in that other person's 'general situation.'" . . . "'[t]he existence of a duty depends on the foreseeability of the injury'"). *See also Nackowicz v. Weisman Ents. Holdings, Inc.*, 2011-Ohio-3635, ¶ 21 (12th Dist.). This is because, as a society, we expect people to exercise reasonable precautions against risks that a reasonably prudent person would anticipate and we do not expect people to guard against risks that a reasonable person would not foresee. *Cromer* at ¶ 24. "The foreseeability of the risk of harm is not affected by the magnitude, severity, or exact probability of a particular harm, but instead by the question of whether some risk of harm would be foreseeable to the reasonably prudent person." *Id*. The reasonable person standard is an objective standard, not a subjective standard. *Wheatley v. Marietta College*, 2016-Ohio-949, ¶ 85 (4th Dist.), citing *Columbus v. Kim*, 2008-Ohio-1817, ¶ 23 (O'Donnell, J., concurring); *Kraynak v. Youngstown City School*

*Dist. Bd. of Edn.*, 2008-Ohio-2618, ¶ 16.

{¶ 22} There are no Ohio cases directly addressing the question of whether it is foreseeable that wind may cause a patio or tabletop umbrella to sail through the air and injure a bar or restaurant patron.[6] However, in cases stretching back nearly a century, multiple courts in other states have found the potential harm to patrons caused by umbrellas blown by wind to be foreseeable and to give rise to a duty of care. *See Blue v. St. Clair Country Club*, 7 Ill. 2d 359, 363-364 (Ill. 1955) (duty existed when injury from umbrella could have been foreseen); *Brewer v. United States*, 108 F. Supp. 889, 890, 893-894 (M.D. Ga. 1952) (finding duty owed to patron of swimming pool who was killed by umbrella blown by wind); *Gerhardt v. Manhattan Beach Park, Inc.*, 237 A.D. 832, 832 (N.Y. App. 2d Dept. 1932) (finding duty of "place of entertainment or recreation" to protect patrons from "the danger of one of the large beach umbrellas being carried through the air by the wind"). *See also Novak v. Wal-Mart Stores, Inc.*, 2007 WL 9735943, at *1-2, 8 (D. Minn. May 4, 2007) (finding manufacturer of patio umbrella that struck store patron when blown by wind had duty to warn about danger of use of umbrella unsecured to table); *Irwin v. Eclectic Dining, Inc.,* 155 F. Supp.3d 126, 129 (D. Mass. 2016) (rejecting motion for new trial on damages in case in which jury found restaurant liable for negligence when its patio umbrella was blown by wind and struck plaintiff in the face, causing injury). We agree that patio or tabletop umbrellas present a risk to patrons when

---

6. The closest Ohio case we can find is *Nackowicz*, 2011-Ohio-3635. We discuss that case in more detail below. But *Nackowicz* involved a sandwich sign, not an umbrella. *Nackowicz* does not state what substance the sandwich sign was made of or what it weighed, but common experience suggests a sandwich sign would be made of wood, plastic, or something heavier and more substantial than umbrella cloth. This is supported by the fact that the sandwich signed caused scarring to Nackowicz's leg. *Id.* at ¶ 2. *Nackowicz* therefore does not shed light on the question of whether a duty was owed in the case before us, which involves a patio umbrella. Further, in *Nackowicz* we never directly answered the duty question, instead discussing duty in the context of whether there was a duty when an act of God caused the injury in that case. *Id.* at ¶ 19-21, 25. This conflated the duty and proximate cause analyses. *Nackowicz* is therefore not instructive when it comes to analyzing the duty element of negligence in the case before us.

blown by wind, and that establishments that utilize such umbrellas have a legal duty to protect patrons from that risk.[7]

{¶ 23} Such a conclusion is mere common sense.[8] King in fact testified that it was "common sense" that he should take umbrellas down to secure them if it was windy outside. It is within the realm of common knowledge that when an umbrella canopy catches the wind, the wind can cause the umbrella to move through the air, and that this does not necessarily require an extraordinary amount of wind. Any person who has visited a beach or sat on a patio on a windy day would be aware of this basic response of umbrellas to wind.

{¶ 24} We therefore find that, as a matter of law, the Saloon owed a duty of care to Colwell that included an obligation to protect her from injuries that may arise if wind lifted a patio umbrella and blew it through the air. Such injuries are foreseeable when patio umbrellas are available to patrons outdoors. There was no genuine issue of fact with regard to the duty element of negligence.

### D. Breach of Duty of Care

{¶ 25} Having determined as a matter of law that Colwell established the first element of her negligence claim—that is, the existence of a duty—we now turn to the question of whether the Saloon breached that duty. Breach of duty, or whether a defendant properly discharged its duty of care, is normally a question of fact for the jury. *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989); *Stull v. Pizza Hut*

---

7. The precise actions that must be taken to satisfy this duty are not mandated by law. Potential options are discussed later in our opinion, but it is not for this court to legislate such steps.

8. Expert testimony is not required to demonstrate facts which are commonly known or understood, and thus the trial court's reliance on the absence of expert testimony on this subject was misplaced. *Ramage v. Central Ohio Emergency Serv., Inc.*, 1992-Ohio-109, ¶ 27 ("matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony.").

*of America, Inc.*, 1996 WL 599440, *2 (12th Dist. Oct. 21, 1996).

{¶ 26} It is within common knowledge that there are two primary means of protecting against the risk that a patio umbrella may strike a person if blown by wind. First, the umbrella may be taken down when there is wind. Second, the umbrella may be physically secured against the wind, with the use of a weighted base and/or a thumb screw or similar fastener holding the umbrella in place.

{¶ 27} In his deposition, King admitted that while the Saloon's employees were instructed to take the umbrellas inside at the close of business and keep them inside overnight, the employees were not trained regarding a policy or procedure regarding the removal of umbrellas in certain weather conditions. King also admitted that the bartender who was working on the day of the incident was never instructed to periodically check weather conditions to ensure the safety of patrons on the patio.[9] And there is no evidence in the record that any employee did so on the day of the incident. King further admitted that the umbrellas were not secured to the tables or to a base in any manner that would prevent them from moving up and down, and that the Saloon did not take any steps to secure the umbrellas against such movement prior to the incident that injured Colwell.

{¶ 28} Given this testimony, Colwell may be able to establish at trial that the Saloon breached its duty to protect her from the risk of an umbrella blown by the wind, thus establishing the second element of negligence.

---

9. On the contrary, King, during his deposition, appeared to state that it was "offensive" to suggest that the bartender should take steps to ensure the safety of the patrons on the patio. He stated that there is only one bartender at a time, that the bartender works at the bar inside the Saloon, and that patrons on the patio must come inside the Saloon to order at the bar. He stated that the Saloon's bartenders are "always looking out for the safety of whatever and the well-being of their customers *that they can see*." (Emphasis added.) This would seem to exclude patrons on the patio, whom the bartender presumedly cannot see without going outside. King went on to state, "But [the patrons are] grown adults and all that, so [bartenders are] not babysitting and all that." Thus, King appeared to state his belief that the Saloon had no duty to check on conditions on the patio. Yet he also acknowledged during his deposition that it was "common sense" that the umbrellas should be taken down in windy conditions.

**E. Proximate Cause and "Act of God" Defense**

{¶ 29} Having determined that the Saloon owed a duty to Colwell and that there are sufficient facts in the record which may allow Colwell to prove at trial that the Saloon breached that duty, the trial court's award of summary judgment to the Saloon may only be upheld if the Saloon established that, as a matter of law, Colwell cannot prove the final, proximate cause element of negligence.

{¶ 30} "The proximate cause of an event is generally thought of as 'that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred.'" *Orren v. BWF Corp.*, 2015-Ohio-62, ¶ 16 (12th Dist.), quoting *Morgan v. Ramby*, 2012-Ohio-763, ¶ 25 (12th Dist.). Proximate cause contemplates a probable or likely result, not merely a possible one. *Id*. Therefore, the issue of proximate cause is not subject to speculation or conjecture. *Id*. "'Normally, the issue of proximate cause involves questions of fact and cannot be resolved by means of summary judgment.'" *Arnett v. Mong*, 2016-Ohio-2893, ¶ 18 (12th Dist.), quoting *Welch v. Bloom*, 2004-Ohio-3168, ¶ 11 (6th Dist.).

{¶ 31} Over a century ago, in *Piqua v. Morris*, the Ohio Supreme Court addressed the "act of God" affirmative defense in the context of a negligence action like the case at bar. In *Piqua*, the defense was described as:

> The term 'act of God' in its legal significance, means any irresistible disaster, the result of natural causes, . . . which could not have been reasonably anticipated, guarded against or resisted.

98 Ohio St. 42, 47-48 (1918).

{¶ 32} The burden of sustaining the affirmative defense that an "act of God" was the direct and proximate result of the plaintiff's injury rests on the defendant. *Stevens v. Jeffrey Allen Corp.*, 131 Ohio App.3d 298, 306, fn. 4 (1st Dist. 1997), quoting 1 *Ohio Jury*

*Instructions*, § 7-27(1), (3), (5), and (6) (1996) ("The burden of proving that [damages were] caused by an act of God which could not have been reasonably anticipated and which was the sole proximate cause of the damage rests upon the defendant."). *See generally Piqua* at 52-54 (affirming jury charge placing burden of proving act of God defense on defendant).

{¶ 33} Building on the Ohio Supreme Court's holding in *Piqua*, it is now well settled that if an act of God is "so unusual and overwhelming as to do damage by its own power, without reference to and independently of any negligence by the defendant, there is no liability." *Korengel v. Little Miami Golf Ctr.*, 2019-Ohio-3681, ¶ 76 (1st Dist.). In other words, "if the act of God is so overwhelming and destructive as to produce the injury, independent of the defendant's negligence, that negligence cannot be held to be the proximate cause of the injury." *Young v. Hollins*, 1991 Ohio App. LEXIS 178, *11 (12th Dist. Jan. 22, 1991). Strong winds, such as 50 to 80 miles per hour winds, or winds with the strength of a "weak tornado", may qualify as an act of God that bars a plaintiff's negligence claim as a matter of law. *Korengel* at ¶ 77 (citing exemplary cases).

{¶ 34} However, "if the evidence indicates that the negligence of the defendant combined with some natural force to produce the injury in question, the issue of proximate causation is one for the jury to consider and summary judgment may not properly be rendered." *Nackowicz*, 2011-Ohio-3635, at ¶ 11 (12th Dist.). Accordingly, in order for an act of God to bar a plaintiff's negligence claim as a matter of law, "there must be 'no evidence in the record from which a reasonable mind could conclude that the defendant's negligence concurred in any way with the Act of God in proximately causing the plaintiff's injury or that defendants [sic] could have reasonably anticipated, guarded against and foreseen the Act of God which caused the injury . . . .'" ([Sic] in original.) *Id.* at ¶ 12, quoting *Sutliff v. Cleveland Clinic Found.*, 2009-Ohio-352, ¶ 20 (8th Dist.).

{¶ 35} Thus, for the Saloon to be entitled to summary judgment on the basis of an act of God defense, it bore the burden of demonstrating that there could be no dispute that the wind that upended the umbrella was an act of God that was the sole cause of Colwell's injury. *Korengel*, 2019-Ohio-3681 at ¶ 76.

{¶ 36} We addressed a somewhat similar scenario in *Nackowicz*. In that case, a wind gust nearing 50-60 m.p.h. upended an A-frame sandwich sign belonging to the defendant, striking and injuring the plaintiff's leg. 2011-Ohio-3635 at ¶ 2. The plaintiff sued the defendant for negligence. *Id.* at ¶ 3. The defendant moved the trial court for summary judgment, arguing that no genuine issue of material fact existed because sudden, excessive winds were the proximate cause of the plaintiff's injury. The defendant argued the winds constituted an unforeseeable "act of God," and thus, the plaintiff's injury was not attributable to the defendant. *Id.* The trial court agreed with the defendant that the 50-60 m.p.h. winds constituted an unforeseeable act of God that was the proximate cause of the plaintiff's injury. *Id.* at ¶ 4. The plaintiff appealed. *Id.*

{¶ 37} On appeal, Nackowicz argued that the trial court improperly decided several issues of fact regarding the defendant's alleged negligence. *Id.* at ¶ 14. This included "whether the placement of the sandwich sign 'and/or the lack of safety features' was the proximate cause of plaintiff's injury . . . ." *Id.* This court rejected the plaintiff's argument, noting that there was no evidence to indicate additional safety features—such as a lock bar or supplemental weights—would have increased the stability of the A-frame sandwich sign at issue in that case. This court therefore concluded that the plaintiff had failed to show a genuine issue of material fact existed as to whether the lack of safety features was the proximate cause of her injury. *Id.* at ¶ 17.

{¶ 38} Here, the trial court determined that this case was analogous to *Nackowicz*. But upon review of the record, we find the facts of this case distinguishable from

*Nackowicz*. Unlike in *Nackowicz*, where there was evidence of 50 to 60 m.p.h. winds, there was no admissible summary judgment evidence admitted as to wind speed or wind conditions that would clearly indicate whether the wind that day was "unusually" strong and "irresistible."

{¶ 39} Instead, King and Colwell provided limited and inconsistent testimony about wind speed on the day of the umbrella incident. King testified that it was a nice, sunny day, and then suddenly the wind picked up. But he had no idea what the wind speeds were that day. Colwell, on the other hand, testified that it was "windy" that day and agreed that the umbrella dislodged in conjunction with a "strong wind." Though Colwell agreed that the wind that lifted the umbrella was "strong," she provided no details describing why she agreed that the wind was "strong." The key fact issue of wind speed was thus disputed, and the Saloon pointed to no undisputed summary judgment evidence that would establish an act of God as a matter of law. A reasonable jury could conclude that there was no unusual or overwhelming burst of wind that constituted an act of God; a reasonable jury could also find the opposite. The jury could also reach different conclusions about whether the Saloon's failure to take any steps to protect against wind was a proximate cause of Colwell's injury. In the case before us, and with the quite limited but still conflicting evidence about wind conditions, there is a question of fact as to whether a "strong" wind gust was the "sole" cause of Colwell's injury or whether the lack of a feature designed to keep the umbrella from moving up and down might have contributed to the incident. *Korengel*, 2019-Ohio-3681 at ¶ 76. Thus, we cannot solely attribute what occurred here to an unforeseeable act of God at the summary judgment stage.

{¶ 40} And in defending against the Saloon's summary judgment motion, it was not Colwell's burden to prove that the wind that lifted the umbrella was "usual." The burden was on the Saloon to establish that the winds were so "overwhelming and destructive"

that they were the sole and proximate cause of Colwell's injury and not the Saloon's potential negligence in failing to better secure the umbrella. *Young*,1991 Ohio App. LEXIS 178 at *11; *Jeffrey*, 131 Ohio App.3d at 306, fn. 4; *Piqua* 98 Ohio St. at 52-54. In these summary judgment proceedings, the very limited yet still disputed evidence as to the wind conditions must be construed against the Saloon when the Saloon bore the burden of proving an act of God as an affirmative defense. *Berkheimer*, 2023-Ohio-116, at ¶ 18 (holding that the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact). That is, the Saloon did not establish a lack of a genuine issue of material fact that the wind conditions satisfied the prerequisites to qualify as an act of God at this stage of the proceedings.

{¶ 41} Because the summary judgment record contains some evidence that, if believed, would allow a reasonable person to find that the Saloon breached its duty and that this breach, either alone or in combination with an act of God, proximately caused Colwell's injury, the Saloon was not entitled to summary judgment. *See, e.g., Korengel*, 2019-Ohio-3681, at ¶ 78-79 (finding appellants were not entitled to summary judgment on appellee's negligence claims based on the act of God affirmative defense where "there was disputed evidence of negligence that allegedly contributed to the injury"). This matter is instead better suited for a trial where the fact finder may determine the issues of whether the Saloon breached its duty of care and whether an unforeseeable act of God was the sole proximate cause of Colwell's injuries. Accordingly, finding merit to Colwell's argument regarding the common pleas court's summary judgment decision, Colwell's single assignment of error has merit and is sustained.

{¶ 42} To be clear, we offer no opinion on the ultimate issue of the Saloon's potential liability in this case. We simply find that it was error to grant summary judgment.

### III. Conclusion

{¶ 43} For the reasons outlined above, and having found merit to Colwell's single assignment of error, the trial court's decision granting summary judgment to the Saloon on Colwell's negligence claim is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

{¶ 44} Judgment reversed and remanded for further proceedings.

M. POWELL, J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 45} I respectfully dissent because, based on the record and applicable case law, the Saloon should not be held liable for Colwell's injuries due to this unfortunate and unforeseen act of nature considered an act of God/force majeure, as a matter of law. Therefore, unlike my colleagues in the majority, rather than reversing and remanding the trial court's decision granting summary judgment to the Saloon on Colwell's negligence claim, I would overrule Colwell's single assignment of error challenging the trial court's ruling and instead affirm the trial court's ruling.

{¶ 46} I agree with the majority's conclusion that the Saloon owed Colwell a duty of ordinary care to keep its bar and outdoor patio reasonably safe to prevent unnecessary or unreasonable hazards. Ordinary care means the care a reasonably prudent person would exercise in the same or similar circumstances. *Gedeon v. East Ohio Gas Co*., 128 Ohio St. 335, 338 (1934). However, Colwell failed to present any evidence of what actions a reasonably prudent establishment could have taken to prevent or eliminate the ability of an unforeseen explosive gust of wind to damage the tabletop umbrella. Additionally, Colwell did not provide evidence that the force of nature seen in the video was typical

seasonal weather and was reasonably foreseeable. Therefore, I disagree with the majority's finding that Colwell met her reciprocal burden that required her to present specific facts showing that there was a genuine issue of material fact as to whether the Saloon breached its duty of ordinary care.

{¶ 47} A straightforward review of the record shows that Colwell did not provide any expert testimony, through reports, affidavits, or depositions, to prove that the Saloon's standard placement of the umbrella—protruding up and through the table while within its pedestal base—was negligent. She also failed to present any evidence of what steps the Saloon should reasonably have taken to prevent this unforeseeable event. The sudden and unexpected gust of wind lifted the umbrella vertically, more than three feet, through the pedestal sleeve and the tabletop center hole; once suspended above the table, the umbrella turned horizontally, with one end striking Colwell. This occurred in just two to four seconds, as shown in a video admitted into evidence for summary judgment.

{¶ 48} Therefore, based not on speculation but on the record properly before this court, I conclude that Colwell, as the nonmoving party, did not meet her reciprocal burden of presenting specific facts indicating a genuine issue of material fact regarding whether the Saloon breached its duty of care. I find this failure, standing alone, to be fatal to Colwell's negligence claim.

{¶ 49} Furthermore, and perhaps more importantly, I find that Colwell's injury was not reasonably foreseeable as a matter of law. This is because, as a straightforward review of the record shows, there is no evidence indicating that the Saloon had, or reasonably should have had, knowledge that its outdoor patio umbrellas would be dislodged by the wind shown in the video. "Strong wind may qualify as an 'act of God' that bars a plaintiff's claim as a matter of law." *Korengel v. Little Miami Golf Ctr.*, 2019-Ohio-3681, ¶ 77 (1st Dist.); *see Hoang v. P N K Lake Charles, LLC*, 2025 U.S. Dist. LEXIS

34043 (W.D. La. Feb. 25, 2025) (finding genuine issue of material fact existed as to defendant's alleged negligence where testimony indicated hotel's beach umbrellas had blown over on other occasions striking patrons, thus establishing foreseeability).

{¶ 50} The trial court determined that there was "zero evidence" that the Saloon typically experienced "fast or heavy" wind and that on the day in question, there was no evidence "that any of the umbrella/table combinations [used by the Saloon] had had prior similar issues," thus absolving the Saloon from liability due to a lack of reasonable foreseeability. The court concluded that "[s]ince there is no evidence of a similar incident occurring [at the Saloon] prior to October 10, 2021, the Court cannot find this was foreseeable." Regarding my colleagues' decisions, my de novo review concurs with the trial court.

{¶ 51} The record clearly shows that the expectation of the Saloon's outdoor patio table umbrellas becoming dislodged from their pedestal bases by the extreme force majeure was entirely unforeseen by the Saloon, and reasonably so. Given these circumstances, I conclude that Colwell's injury was not reasonably foreseeable as a matter of law because the Saloon had no way of knowing that the umbrella that hit Colwell could become dislodged by the wind. In fact, Colwell testified she observed the umbrella moving as affected by the wind; she displayed no reason to be concerned until the gust unexpectedly and explosively took control. One need only watch the video to perceive how unanticipated and unpredictable the event was.

{¶ 52} Accordingly, rather than any negligence on the part of the Saloon, I find Colwell's injury was caused by an unforeseen and uncontrollable act of nature—an act of God/force majeure—absolving the Saloon of liability as a matter of law. The accident was directly and exclusively due to natural causes, without human intervention, and no negligent behavior by the Saloon contributed to it. This has been the law for over a

century. *See Davis v. Somers-Cambridge Co.*, 75 Ohio St. 215, 225 (1906) ("the negligence necessary to create a cause of action where the act of God intervenes must nevertheless be a proximate cause of the damage"). To hold otherwise, as the majority does, would make the Saloon an insurer of Colwell's safety. But, as it is well established, "a business owner or occupier is not the insurer of their invitees' safety." *Anderson v. Jancoa*, 2019-Ohio-3617, ¶ 25 (12th Dist.), citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). Therefore, because I see no error in the trial court's decision to grant summary judgment to the Saloon, I respectfully dissent.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded for further proceedings according to law and consistent with the above Opinion.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Mike Powell, Judge

- 20 -